## PROSSER v. DAVIS.

1. **Ferry**: RIPARIAN OWNER. On the application of a riparian owner, the proprietor of a ferry will be enjoined from landing his boat on the lands of such owner, following *Prosser* v. *Wapello County*, *ante.*

2. —— ON PUBLIC HIGHWAY. The land within a public highway at its *terminus*, and above high water mark, cannot be appropriated and used as a ferry landing without the consent of the owner of the fee, unless condemned to that use, and the owner compensated, as required by law, following *Prosser* v. *Wapello County*, *ante.*

Whether the same rule applies to lands below high water mark, *quere?*

*Appeal from Wapello District Court.*

FRIDAY, APRIL 14.

PETITION IN EQUITY FOR INJUNCTION: FERRY FRANCHISE: RIPARIAN RIGHTS. In 1858, Prosser obtained from the County Court a license for a ferry across the Des Moines river at Ottumwa, at the foot of Market street. This license was exclusive, for one mile up and one mile down the river. One Majors was then the equitable owner of the land opposite, being the land to which this controversy relates, and known as lots 3 and 6, in sec. 25, T. 72, R. 14. This land is situated in a bend of the river, and is mainly a low or sandy bottom. In January, 1862, Davis obtained a license for a ferry from the foot of Green street, in Ottumwa, this being the next street below Market street, and some two hundred yards distant from it. After this, viz., in July, 1862, plaintiff became the owner of the land above described, by purchase at sheriff's sale on special execution against Majors. Davis, before the sale, had Majors' consent to use the land for the purposes of his ferry.

Soon after the plaintiff purchased the land, viz., in August, 1862, he commenced this suit in equity against Davis, and asks for an injunction restraining him from exercising

or carrying on his ferry. His grounds for this suit are substantially two:

1st. An *exclusive* ferry franchise, by virtue of his license.

2d. His ownership of the land on the opposite side of the river from Ottumwa, and upon which it is charged that Davis necessarily must and does land and receive passengers and property.

The defendant, in his answer, admits the plaintiff's license and sets up his own, alleging that the plaintiff was duly notified of defendant's application for the license, and never appealed from the action of the supervisors in granting it. Defendant alleges that his landing is three hundred feet from where plaintiff's land extends; that is, three hundred feet *in* from high water mark.

In January, 1863, a temporary injunction was granted, as prayed. In February, 1863, Davis commenced proceedings under the road law to lay out a road over Prosser's land, running from Davis' ferry landing (opposite Green street), about 17.50 chains, till it intersected the public road leading down to Prosser's ferry landing; out of which proceeding the case of *Prosser* v. *Wapello County, ante,* arose.

After the appraisers had allowed fifty dollars to Prosser as damages in consequence of establishing the road, Davis tendered him the amount, deposited it in court, and also filed bond to secure any damages that might be awarded to Prosser.

Testimony was taken; but upon what the cause was heard is not stated in the record entry, or in any certificate of the court or clerk; and in August, 1863, a decree was entered forever restraining the defendant (Davis) from running his ferry. From this decree the defendant appeals.

At the November Term thereafter, the defendant moved the court to modify the decree rendered at the August Term; because:

1st. It should have restricted the running of the ferry only so far as it trespassed upon the lands of Prosser; and, ·2d. Because the defendant shows to the court that, since the last term, a public road has been laid out over and upon the lands of Prosser leading to said ferry. An affidavit was filed, stating that the supervisors did establish such a road, at the June Term, 1863, and does not state that any appeal had ever been taken from the action of the board.

The record and papers in the road case are not before us in this case. The record entry there recites, that the parties appeared upon the motion to modify the decree, by their attorneys, submitted the matter to the court, and that the court "modified the decree so as only to enjoin the defendant from running his ferry and landing his ferry-boat upon the real estate of the plaintiff; and nothing in said decree, or in this decree, shall prevent the said ferry-boat from landing on any highway now established, or hereafter to be established, over said land."

From this modification of the decree, Prosser appeals.

*Knapp & Wright* for the appellant.

*Hendershott & Burton* and *M. J. Williams* for the appellee.

DILLON, J. — The law governing the rights of these parties, is, to a very great extent, settled by the principles 1. FERRY: announced in the case of *Prosser* v. *Wapello* riparian owner. *County, ante,* to which we refer.

Aside from the effect of the establishment of the alleged new highway on the land of Prosser, it is clear that he had a right to enjoin Davis from landing upon and operating his ferry, inviting others to travel over and trespass upon the private property of Prosser.

The condition of the record is such that we cannot review the August decree upon its merits, as the testimony is not properly brought before us. See, in connection with

statement, the case of *Andersson* v. *Easton & Son*, 16 Iowa, 56, and cases there cited.

Besides, it seems probable, from the uncontroverted facts (aside from the question arising out of the alleged establishing of the highway), that the August decree was right if it was simply intended to restrain Davis from landing his ferry-boat upon the land of Prosser.

The decree is, however, not very clearly worded, and to that extent was properly modified "so as only to enjoin the defendant from running his ferry and landing his ferry-boat upon the real estate of the plaintiff." That is, he is not enjoined from operating his ferry, provided he can do so without landing upon the real estate of Prosser."

This brings us to the question, whether the court in other respects properly modified the August decree.

The ground upon which the other modification was asked, was substantially, "that a public road had, since the decree, been laid out over and upon the lands of Prosser, leading to the ferry of Davis."

The plaintiff claims, that the defendant lands his boat and discharges passengers and teams *above* the high water line; that his cable is fastened into the plaintiff's land, and that no road has been established. The defendant denies each of these propositions. If no road has been established (and the record before us *in this case* does not permit us to decide that question), we are of opinion, upon the assumption that all of the testimony is before us, that the defendant should be enjoined from running his ferry to or landing upon any part of the plaintiff's land or the banks thereof. Even if he lands his boat below high water mark, as he claims he does, still there is no exit from or access to the defendant's ferry without crossing over and trespassing upon the lands of Prosser.

But if a road has been established, the question whether this would give the defendant a right to land with his

2. —— on ferry-boat at the *terminus* of said road, has been examined in the case of *Prosser* v. *Wapello County*, to which we refer without repeating what is there said. If the landing upon such road is *above* high water mark, the principles established in the case would deny to the defendant the right to use the highway as a place to land and fasten boats, and to receive and land passengers, freight, &c.

*public highway.* · If the landing upon the highway is on the shore of the river below the high water line, this would, under the decision of *McManus* v. *Carmichael*, 3 Iowa, 1, present a new question of much difficulty, and one in relation to which, as it may not arise upon a retrial, we do not express an opinion. Indeed the question, in this aspect of it, has not been argued by counsel, and it would be improper, even if we felt clear upon it, decisively to pronounce upon it at this time.

We may add that there is no proof in the record in relation to the navigability or non-navigability of the Des Moines river in fact; and our attention has not been called to any specific public act or declaration of law in. this regard.

Whether there are such acts or declarations we have not, in the disposition of the case which we have judged best to make, deemed it necessary to ascertain.

It was asserted to be a navigable stream in the case of *Steamboat Globe* v. *Kurtz*, 4 G. Greene, 433, but whether upon proof, upon stipulation or concession of counsel, or upon legislative declaration, does not appear. But in the laying down of the legal principles applicable to this and the other case, we have assumed it to be a navigable stream.

Admitting that a road has been established, as claimed by Davis, this alone, as will be seen by reference to the case of *Prosser* v. *Wapello County*, would not justify

the modification of the August decree; so far certainly, as to allow the defendant to use the highway *above* high water mark to land and fasten his boats, and receive and discharge freight and passengers.

We accordingly reverse the order modifying the decree so far as the modified order allows the defendant " to land with his ferry-boat upon any highways now established or hereafter to be established over the plaintiff's land."

Considering the state of the record and the circumstances of the cause, this reversal is without prejudice to the renewal of the application to modify the August decree, which application shall be heard *de novo* upon such testimony as the parties may produce. Meanwhile the August decree is to be and remain in full force.