## J. H. GUINN *v.* S. S. EAVES *et al.*

### *(Knoxville.* September Term, 1906.)

1. **PUBLIC FERRIES.** Owner of both banks entitled to preference of ferry franchise must be owner at both landings; landing in public road.

    The rule of law giving the owner of the land on both sides of a stream, where a ferry has been or shall be established, a preference in the matter of a ferry franchise, is not applicable where the ferry franchise granted by the county court to such owner contemplates a landing on one side at the mouth of a public road passing through his land, and on the opposite side, a landing below his land, and upon the land of another, where such landings were maintained; and such owner on both sides with such ferry franchise has no preference as against a ferry franchise subsequently obtained by the owner on the opposite side from the county court of a different county on his side of the stream.

    Code cited and construed: Sec. 1696 (S.); sec. 1423 (M. & V.); sec. 1241 (T. & S. and 1858).

    Case cited, approved, and distinguished: Allen v. Farnsworth, 5 Yerg., 189.

2. **SAME.** Discretion of county court in granting second ferry franchise is not grossly abused and will not be revised, when.

    The county court, in granting a ferry franchise to operate a second ferry across a stream, where an existing ferry is properly operated and carried on under a ferry franchise previously granted to another, is not guilty of gross abuse of its discretion, and the supreme court will not interfere therewith, though one ferry will accommodate the traveling public, and, if carried on properly, no public exigency demands two ferries.

    Case cited and approved: Blair v. Carmichael, 2 Yerg., 306.

Guinn v. Eaves.

3.  **SAME.** Ferry franchise is grantable to one of the tenants in common of land on the stream.

A ferry franchise may be granted by the county court to one of several tenants in common of the land on the bank of a stream.

4.  **PUBLIC ROADS.** By acceptance of dedication and working for years by action of county court.

A road is sufficiently dedicated to the public for a public road, where it had been accepted by the county court as a public road, and hands had been assigned to work it for years.

5.  **COURT OF CHANCERY APPEALS.** Finding of intent to dedicate a road to the public, without the special facts, is sufficient.

The finding, by the court of chancery appeals, of an intent to dedicate a road to the public, is a finding of fact, and it is unnecessary for that court to find the special facts to enable the supreme court to determine that question.

Cases cited and approved:  Bank v. Evans, 95 Tenn., 705; Ellis v. Brabson, 99 Tenn., 540.

6.  **PUBLIC FERRIES.** Damages recoverable by owner of one ferry franchise against the owner of another ferry franchise wrongfully excluding him on refunding bond given upon dissolution of injunction.

Where an injunction is properly issued at the instance of the complainant as the owner of one ferry franchise against the defendant as the owner of another ferry franchise, which injunction was dissolved upon a refunding bond, but was restored and made perpetual upon the final hearing, the complainant is entitled to recover from the defendant and his surety on the refunding bond, one-half of the ferriages collected or that should have been collected since the dissolution of the injunction, after deducting the actual, proper, and necessary costs and expenses incident to the ferrying.

FROM RHEA.

Appeal from the Chancery Court of Rhea County.—
T. M. M'CONNELL, Chancellor.

V. C. ALLEN and G. H. WEST, for Complainant.

BURKETT, MILLER, MANSFIELD & SWAFFORD and J. W.
LILLARD, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The controversy in this case arises over ferry rights
claimed by the respective parties. At the point where
the ferry in question is located, the Tennessee river is
the line between Rhea county and Meigs county. In
April, 1902, the defendant Eaves obtained from Rhea
county court a ferry franchise or right to operate a
licensed ferry at the point in question. At that time
the landing on the Meigs county side was on land which
belonged to complainant and certain associates of his,
tenants in common with him, while the landing on the
Rhea county side was at the mouth of a public road
which passed through the land of Eaves. The latter
operated the ferry in this manner, using the two land-
ings just stated, until a short time before the present

bill was filed, when he cut out a new landing on the Meigs county side on his own land, a short distance above the land of complainant. But it seems he was still using the landing on complainant's land at the time the bill was filed.

In October, 1902, the complainant obtained a franchise from Meigs county to operate a ferry at the same place; the landing, however, being designated as below the Miller spring branch, which would place it lower down than the landing on complainant's land, which Eaves was using. The complainant did not give the requisite bond until July, 1904. After doing this, he attempted to use his ferry rights, but was prevented from so doing by the fact that Eaves, through his lessee, Perry, kept a ferryboat all the time moored at the mouth of the public road before mentioned on the Rhea county side.

Thereupon the present bill was filed by Guinn to enjoin Eaves and Perry from so blocking the landing on the Rhea county side and from hindering him in the use of his franchise. Shortly before this time Eaves filed a petition in the county court of Meigs county, asking that body to recall the franchise which it had granted to Guinn. That court refused to grant the prayer of this petition, and an appeal was taken to the circuit court of Meigs county from the action of the lower court, and an appeal was about to be prosecuted to this court by Eaves, when the present bill was filed and that matter was included therein. It seems to have been agreed by

the parties that the controversy raised by that petition should be settled in the present litigation.

In his bill Guinn set out with some degree of fullness the rights claimed by him under his franchise and the injuries which he had suffered at the hands of Eaves and Perry. The latter answered with great elaboration, setting out their defenses. The chancellor decreed in favor of Guinn, and from that decree the defendants have appealed to this court, and have assigned errors.

Substantially two questions are presented, or, rather, the various controversies may be ranged under two inquiries; that is, whether Eaves was entitled to the preference in the matter of the ferry franchise, and, if he was not, did the county court of Meigs county act improvidently in granting the franchise to Guinn?

The sections of Shannon's Code bearing upon the subject are the following:

"1696. The county court shall authorize the owner of any ferry landing, or the owner of land on each side of the river where a ferry has been or shall be established, to erect a ferry or ferries at said landings.

"1697. When the banks are owned by different persons, each owner shall be authorized to keep a ferry and shall be bound the keep the opposite bank as well as his own bank in complete repair, for which purpose full power and authority are given hereby to each owner respectively.

"1698. And each owner may transport from and to either bank all persons, with their effects, applying to

either of them for transportation across such ferry, and may land his ferryboat at the place on the opposite bank that is cut and prepared for that purpose, and only at that place, unless prevented by high water or unavoidable accident.

"1699. Every ferry keeper shall keep the banks of the river in good repair, where he keeps a ferry on one or both sides of the water course.'

"1703. The county court shall compel every person licensed to keep a ferry or toll bridge to enter into bond, with good and sufficient security, in the penalty of $2,000, payable to the State, conditioned that he will constantly find, provide, and keep good and sufficient boats, or other proper craft, or keep his bridge in good repair and well attended for the crossing of travelers and others, their horses, vehicles, and effects."

We have several cases in our reports that bear upon the controversy raised by this record. They are as follows: *Blair* v. *Carmichael*, 2 Yerg., 306; *Memphis* v. *Overton*, 3 Yerg., 387; *Allen* v. *Farnsworth*, 5 Yerg., 189; *Nashville Bridge Co.* v. *Shelby*, 10 Yerg., 280; *Sparks* v. *White*, 7 Humph., 86; *Levisay* v.`Delp*, 9 Baxt., 415.

It is unnecessary to go into these authorities with any degree of elaboration. It is sufficient to say that under the sections of the Code above quoted, and the constructions placed on the original statutes by some of the cases, and upon the sections of the Code by other of the

117 Tenn—34

cases mentioned, the following principles are established: The operation of a ferry is a franchise which may be granted by the county court. It may be granted to a person owning land upon both sides of the stream, where the landings are to be made on such lands; or, where the land on the respective sides of the stream are owned by different persons, each may be granted a ferry privilege, but the preference should be given to the one owning the land upon both sides. After the county court has granted such franchise, it has the right to revoke it, and such revocation may be made upon the petition of any interested party. From the action of the county court an appeal may be made to the circuit court, and from that court to this court, and the discretion of the county court will be here corrected. However, it will not be interfered with unless there is a very grave breach by the county court of the discretion which is devolved upon it by the law under the statutes referred to.

The case which more especially asserts the right of preference in the person owning land on both sides of the stream is *Allen* v. *Farnsworth*, supra. The syllabus of that case fully expresses the point, and is as follows:

"Under 1807, 25 (Code, sec. 1241), the owner of the soil on both banks of the river is entitled to the right to keep the ferry in preference to any other person, and, if the privilege has been conceded to another by the county court, it shall be rescinded upon the ap-

plication of such person expressing readiness to undertake the responsibility."

The section of the Code referred to is that which appears in the Code of 1858. The corresponding section in Shannon's Code is section 1696, supra.

The defendant Eaves did not, however, bring himself within the protection of the authority just quoted, for two reasons: First. If we assume that the road on the Rhea county side was not a public road, but that the landing there should be treated as made upon his land, still at the time the franchise was granted the landing on the other side which was contemplated by the order of the Rhea county court belonged to complainant, Guinn, and his associates. Second. The court of chancery appeals has found that the landing on the Rhea county side was on a public road. It thus appears that on the Rhea county side the landing was on a public road, and on the Meigs county side the landing was on complainant's land. The defendant, therefore, falls completely outside of the protection of the case referred to. The defendant could not, by changing his landing on the Meigs county side shortly before the bill was filed, place himself within the rule laid down in *Allen* v. *Farnsworth*. He had for years prior thereto operated his franchise by using the two landings above mentioned. It was too late for him to change just upon the eve of the contemplated litigation.

The case, then, stands in this way: Eaves was using the public road as a landing on the Rhea county side,

and Guinn's land on the Meigs county side; the land on
the Rhea county side, on which the public road was
situated, being the land of Eaves.  Under these circum-
stances, we think there can be no doubt that the county
court of Meigs county had the right to grant a ferry
franchise to Guinn; he being the owner upon one bank
of the river.

But it is insisted that the Guinn franchise should
not have been granted, because it is said that a second
ferry was not needed.   On this subject the court of
chancery appeals makes the following finding: "One
ferry, under the proof, will accommodate the traveling
public, and, if carried on properly, no public exigency
demands two ferries."   That court also finds that Eaves
has given good service.

In *Blair* v. *Carmichael*, supra, the court, speaking of
the discretion of the county court in matters of this
character, and of the corrective power of the supreme
court, said:

"We are of opinion that the legislature, having given
to the county courts the jurisdiction of establishing, con-
tinuing, and discontinuing roads and ferries within
their respective counties, have thereby considered them
the best qualified for the exercise of the powers so con-
ferred.   Their local residence presumes a knowledge of
the public interest in these matters in general, and as
having the best means of acquiring information upon,
and examining the merits of, the respective applications
that may be made to them on the subject.   It might,

perhaps, have been the original intention of the legisla-
ture that this jurisdiction in the county courts should be
exclusive. Be that as it may, the superior courts of this
State, and after them the circuit courts, have under-
taken to control the exercise of their power on this juris-
diction in some particular instances; and this court, the
jurisdiction being settled, has the right of examining
the judgment of the circuit court, and consequently the
decision of the county court. In so doing, this court,
as a revising tribunal, must not forget the latitude of
discretion necessarily bestowed on the county courts in
the exercise of this jurisdiction by them, and the su-
perior means possessed by them for the correct exercise
of it, compared to what this court may be reasonably
supposed to possess. This court, however, is able to dis-
tinguish between a reasonable exercise of jurisdiction,
and such an exercise as might be considered a gross
departure from it. In this last case, the corrective
powers of this court would be called in action."

The court thereupon proceeded to consider two ob-
jections that were offered by Blair. The first was that
his was the oldest established ferry. It was held that
this was not a good reason for canceling the franchise
of a second ferry. Another objection which Blair of-
fered was that the establishment of Carmichael's ferry
would, by drawing off a part of the emoluments from his
ferry, discourage his exertions and render him less able
to discharge his duty. Responding to this objection, the
court said:

"All experience is against this objection. Every day's observation confutes it, and stands in opposition to its correctness. We find, from the infirmity of human nature, that security degenerates into sloth, and a want of stimulus is followed by carelessness and inattention. A powerful incentive, if not the best, to the faithful discharge of duty, is interest; and the endangered profits of a lucrative ferry give a more forcible present impulse than the future coercion of the bond given to the county court for performance."

In view of the principles thus laid down, we cannot say that the county court, even under the finding of facts quoted from the opinion of the court of chancery appeals, was guilty of a gross abuse of its discretion in establishing the second ferry.

A subsidiary question argued in the briefs of counsel is that there was an improvident exercise of the discretion of the county court, because it appears that Guinn was not the sole owner of the land on the Meigs county side, where his ferry was established, but that other persons owned it as tenants in common. There is no distinct finding in the opinion of the court of chancery appeals that these other persons had consented to Guinn's appropriation of the ferry privilege, but we think it is clearly assumed all through the opinion. Moreover, it appears these people were his associates in a store on that side, and, besides that, they signed his bond. But, apart from these considerations, we think the county court might grant the privilege to one of

several tenants in common. It is said the county court might grant a right to each of the cotenants and thus establish a multitude of unnecessary ferries. If they pursued such course, no doubt their discretion would be corrected as being exercised with gross unreasonableness. At all events, it does not lie in the mouth of Mr. Eaves to champion the rights of Mr. Guinn's cotenants, who certainly are not complaining, so far as this record shows.

It is insisted in the brief of defendant's counsel that the court of chancery appeals ought to have found certain special facts with a view to enabling this court to determine whether there had been a dedication of the road on the Rhea county side to the public. This was unnecessary. It has been held that the finding of an intention to dedicate is a finding of fact. *Ellis* v. *Brabson,* 99 Tenn., 540, 42 S. W., 438; *Bank* v. *Evans,* 95 Tenn., 705, 34 S. W., 2. Moreover, sufficient facts are found by the court of chancery appeals to justify its holding that the road was a public road. Among other things, we need only mention the fact that it had been accepted by the county court as a public road, and hands had been assigned to work it for years.

In the court below the chancellor dissolved the injunctions which had been previously granted against the obstructive tactics of Eaves, but exacted of him a bond to account for the tolls. He also restored the injunction as originally prayed for in the bill, and made it perpetual. With respect to the tolls, he decreed that the

complainant should recover of S. S. Eaves, and Jack Perry and T. M. Burkett, as surety on the refunding bond, one-half of the ferriages collected or that should have been collected after the dissolution of the injunction, after deducting the actual and proper costs and expenses incident to the ferrying. He referred the case to the master to report to the next term, and ascertain what amounts the defendants had collected or should have collected as ferriages after the dissolution of the injunction, and what was the actual and necessary cost and expenses incident to the discharge of said ferriage duty.

The court of chancery appeals affirmed the decree of the chancellor, remanded the cause, and taxed the defendants with all the costs of the case.

We are of opinion there was no error in the decree of the court of chancery appeals, and it is affirmed.