## LAKE v. COMBS.

### Opinion delivered July 15, 1907.

1. ACTION—MISJOINDER OF CAUSES—WAIVER.—A misjoinder of causes of action is waived by failure to move to strike out the causes improperly joined. (Page 26.)

2. SALE—TRANSFER OF TITLE.—Where a lease of land to be used for a ferry stipulated that at the expiration of the lease the ferryboat and appliances should belong to the lessor, and before the lease expired the lessees sold the boat and appliances to another, the title passed to the purchaser, the lessor having merely an executory contract for delivery which passed no title until executed. (Page 26.)

3. FERRIES—RIGHT TO ATTACH CABLE TO ANOTHER'S LAND.—Kirby's Digest, § 3556, providing that if a person own the land on one side only of a ferry, or have possession thereof, "he shall have the privilege of a public ferry from his own shore, with the privilege of landing his boat and passengers on the opposite shore, and making the landing and road up said opposite bank, and keeping the same at all times in good repair and condition for ascending and descending," does not authorize such person to attach the ends of his ferry cable to another's land on the side of the river opposite to his land. (Page 27.)

Appeal from Marion Circuit Court; *E. G. Mitchell,* Judge; reversed in part.

*W. S. Chastain,* for appellants.

1. Since Combs is attempting to hold appellant's land without right or title, he should be ejected. Upon being ejected, can he take with him the ferry outfit as an innocent purchaser? If it is a part of the realty to which it was attached, he could not be an innocent purchaser, because he had full knowledge that the land belonged to the Lakes.

On the theory that it is personalty, which is not admitted, then, while possession of a chattel is *prima facie* evidence of title in the holder, yet, if the vendee has actual or constructive notice

that it is not the property of the holder, he căn not invoke the protection of innocent purchaser. 24 Am. & Eng. Enc. of L. (2 Ed.), 1040-1, 1169.

If the transfer to Cornell and sale by him to Combs were good, still the latter acquired no greater interest than Cornell had, which was an interest terminating with the lease on June 30, 1905. 13 Am. & Eng. Enc. of L. (2 Ed.), 653.

2. When the ferry was attached to the lands, it became a permanent fixture—a part of the realty. 26 Ark. 464; 41 Ark. 209; Kirby's Digest, § 3556; Tiedeman, Real Prop. § 3; 12 Am. & Eng. Enc. of L. (2 Ed.), 1088, 1099; 13 *Id.* 665, note 1, 597.

*Horton & South* and *Bradshaw, Rhoton & Helm*, for appellee.

1. Neither forcible entry and detainer nor ejectment will lie for a ferry. 12 Am. Dec. 295; 55 How, Pr. 138.

There is no agreement by the parties that the ferry outfit shall become realty, but only that it shall become the property of Lake. Being personalty to begin with, it devolved upon appellant to show that it had become a fixture.

In order to make a fixture of a chattel, its annexation must be for the permanent use and improvement of the land—accessory thereto, and not merely to the particular business being carried on upon it at the moment. 13 Am. & Eng. Enc. of Law, 613.

2. In order to recover for infringement of one's right to a ferry, he must allege and show a license in himself. 52 Ark. 61; 51 Ark. 235. If it is held that appellee is in possession of any part of the bank of the river by reason of having tied his cable to the bank on appellant's land, then appellee had the right to maintain possession of enough of the Lake land to carry on ferry operations. At most, appellant could only recover the real value of the land so taken; he could not recover the land itself, 69 Ark. 104. Moreover, the granting of a ferry privilege is not taking private property for public use without compensation. 20 Ark. 561. See also Kirby's Digest, § 3556.

HILL, C. J. A. C. Lake, as guardian of Ernest B. Lake and Louise Bradford, minor heirs of D. W. Lake, deceased, filed a complaint in the Marion Circuit Court against Thomas Combs,

in which he sought to recover for his wards certain real estate held by Combs, and also a ferry boat and outfit.

The case was tried before the circuit judge sitting as a jury. He gave judgment for the defendant, and the plaintiffs have appealed; the minors in the meantime having reached majority.

The record is peculiarly constructed. There are depositions and oral testimony copied in the transcript, without any authentication, and following these depositions and testimony is the bill of exceptions, which contains in a concise form the evidence of witnesses. Only the testimony authenticated is considered.

The testimony on behalf of the plaintiffs (appellants here) is substantially as follows:

Wilber testified that he made a contract with A. C. Lake, guardian of these minors, which was introduced. By it he leased a tract of land for a ferry privilege on White River at Lake's Ferry; and he was to put in a ferry boat at a cost of not less than $50, the boat to be large enough to carry a wagon and team hitched to it, and to expend not less than $50 on repairing the road leading to the ferry, and to run a ferry regularly for a period of two years from July 1, 1903; and at the end of that time to return the land, together with the ferry outfit, to the Lake heirs; and other details not necessary to notice.

About the time he made this contract with Lake, or shortly before it, Keener, Cowdrey and Jones built a ferry boat, and began operating a ferry at this point. Their ferry boat was run by means of poles and oars, and landed at the public road on each side of the river. The land on the Baxter side of the river, opposite the Lake tract, belonged to Combs. When Wilber got this contract with Lake, he formed a partnership with Keener, Cowdrey and Jones; and Gray, Keener's partner, was also taken into the company, making it consist of five. They then bought a wire cable with which to operate the ferry, and attached it to the Lake land 40 or 50 feet outside of the public road, and stretched it across the river, and fastened it at the other end to a tree in the public road. They did not touch on Combs's land on the Baxter side of the river. A windlass was placed on the Lake land, and by it the cable controlling the ferry was operated.

Wilber said that Keener, Cowdrey, Gray and Jones knew

of said contract, and operated the ferry under it. They, his partners, claimed that they could operate a ferry at that point without a lease from Lake or anyone else, there being a public road on each side of the river; but they did not claim that they could attach their wire cable to the Lake land without a contract, and they did attach their cable to the Lake land and operated their ferry from it under and by virtue of his contract with the Lakes. That the partners were cognizant of the fact that under the contract the ferry outfit was to be the property of the Lakes at the termination of the contract as part of the consideration for the use of the land, and that they were willing to this, as they anticipated that by that time the railroad would be built across the river near there, rendering the ferry of little value. He and his co-owners performed the $50 worth of road work required by the Lake lease. He said he never sold his interest to Cornell, or to anyone else; that Cornell simply operated the ferry for the co-partnership.

When the ferry license was first issued, it was in the name of Jones; but Combs, who owned a ferry a short distance up the river, brought a suit in Baxter County to enjoin Jones from running the ferry; and in order to defeat this injunction the license was shifted from Jones to Cornell and run in his name, so that the ferry would not be stopped. Wilbur said that he did not know of this at the time it was done, and did not consent to it, and that he afterwards learned that Cornell did not pay anything for the ferry, and that no sale was made to him. Cornell was a clerk in the employ of Gray and Keener.

D. T. Jones, another member of the partnership, testified to substantially the same effect as Wilber, and stated that he transferred the license to Cornell in order to defeat the suit of Combs against them, and that there was no sale to Cornell. He says that Cornell did not buy the ferry, and never did own any part of it. He further says that Combs saw the lease from Lake to Wilber prior to the time he claims to have bought, when it was used in the trial of the injunction suit.

Jones says that he and Cowdrey, Keener and Gray contended that they had a right to operate the ferry by means of poles and oars without a lease from the Lakes, but they did not consider that they had a right to attach the ferry to the Lake

land without a contract from them permitting it. That the firm put the ferry in with the intention of operating it until the expiration of the lease of Wilber, and then the railroad would be built, and the ferry business would not amount to much, and that they were willing for the ferry outfit to go to the Lakes at the end of the lease, and knew that was the effect of using the Wilber lease of the Lake land.

A. C. Lake testified to the execution of the contract and the operation of the ferry under it. He said that Combs, after he got possession of the ferry outfit, moved the wire cable further back on the Lake land and fastened it to an iron bar driven in a permanent rock on said land. He testified as to the amount of damages he thought that his wards had suffered by reason of the action of Combs, and of his efforts to have Combs vacate the lands and ferry at the expiration of the lease.

The evidence on behalf of the defendant was as follows: Combs testified that he claims he bought the ferry from Cornell, the party whom he found in possession of it, and claims that he paid $250 in cash for it. That he thought the ferry belonged to Cornell, as Keener told him it belonged to Cornell and for him to buy it. He admits that he saw the lease which Lake gave to Wilber before he bought the ferry from Cornell. He says he let Keener have a lot in Cotter which went in payment for the ferry in controversy. He does not claim that he bought the ferry from Wilber or anyone except from Cornell, as the license was in the name of Cornell. That when he bought the ferry oufit he went to where Wilber, Cowdrey, Keener, Gray and Jones had attached the end of the wire cable to a tree on the Lake land, and moved it further back upon the bluff on the Lake land, and there fastened it to an iron bar in a rock. He also took the opposite end of the wire cable from the public road, and moved it on his own land on the Baxter side of the river, thus making the ferry run from the Lake land to his land, and so operated it from said points.

Keener testified for Combs that he and his partners did not consider the lease which Wilber made with the Lakes as necessary. That they thought they had a right to put in a public ferry there and run it because of the public road which they used on either side of the river. That he declined at all times

to recognize Wilber's lease from the Lakes because he thought it was unnecessary. But he admits that his firm fastened the wire cable to a tree on the Lake land, and operated it from there. He says that they sold the ferry to Cornell, and that "D. T. Jones made the sale to Cornell for our Company;" and Cornell afterwards sold it to Combs. That he told Combs that Cornell was the owner of the ferry.

Gray, another one of the partners, testified that he did not consider the Lake lease necessary in order to operate the ferry. He likewise admits that the ferry was fastened to a tree on the Lake land. He says the license was taken out in the name of Cornell by the company, but did not know who paid for it.

This is the substance of all the testimony in the bill of exceptions. The court found from these facts that there was a *bona fide* sale from Cowdrey, Keener, Gray, Jones and Wilber to Cornell, and by Cornell to Combs, and gave judgment for the defendant, and the Lakes have appealed.

Giving the finding of facts by the judge the same effect given to the finding of a jury, yet this judgment can not be sustained in its entirety. If it be conceded that there was a *bona fide* sale by Cornell to Combs, and a majority of the court do not think that the evidence establishes a sale without notice, yet there was no authority, other than the Wilber lease, for Combs to take and hold possession of the Lake land and operate the ferry upon it. This lease only gave Wilber and those claiming under him the right to occupy the land upon the terms therein stated until July 1, 1905. He further knew that at the end of that time the lessees were to surrender the ferry outfit to the Lakes as part payment for the use of the land during the period of the lease. Combs denies holding under the Lake lease, but it is the only shadow of right he had to possession of the land.

There was likely a misjoinder of actions in joining an action for the recovery of the real estate and of the ferry boat and appliances; but there was no objection to such misjoinder, and under section 6082 of Kirby's Digest such error was waived.

A majority of the court decides that there can be no recovery of the ferry boat or other ferry outfit because there was never a delivery of it, but only a contract to deliver it. They hold that the agreement in the lease for the delivery of the ferry

outfit at the expiration of the term was executory, and the title did not pass until it became executed, which they hold did not occur, but that on the contrary the title passed to appellee Combs under his purchase before the time of delivery fixed by the contract.

Mr. Justice BATTLE and the writer do not agree with that view, as they think that when the partnership took possession of the land under the Wilber lease they attached the boat and other appliances to the land with the understanding that they were to remain there, and Combs stepped into their shoes by his purchase. In other words, that he could not' accept the benefits of the Lake lease without being subjected to the burden of it, and the delivery and title of the personal property passed when attached to the Lake land with intention of remaining there.

Therefore, under the views of the majority, the judgment, so far as the personal property is concerned, is affirmed; but, as indicated, no title whatsoever has passed to the land to Combs, and he is shown by his own testimony to be in possession of it, having the wire cable attached to the land, and operating the ferry with a windlass from it. He has refused to give up this land, and demand has been made upon him. The judgment is reversed, and the cause remanded, with instructions to proceed with the suit for the recovery of the land and the usable value thereof from the date Combs took possession of it.

Reversed and remanded.

Justices WOOD and RIDDICK are of opinion that the judgment in whole case should be affirmed, and dissent from so much of the judgment as is reversed.

ON REHEARING.

Opinion delivered October 7, 1907.

HILL, C. J. Appellee Combs insists that he had a right to tie the end of his ferry cable to any land on the opposite bank of the river from his own land, under section 3556 of Kirby's Digest. This could only give him a right to land on the opposite shore where the public had a right to land, that is, a

public road or other highway. Certainly, it could not give him the right to forcibly take the property of another man for the other end of his ferry landing.

It is further insisted that there is no testimony that shows that Combs had possession of the Lake land, except that he fastened the cable to a rock on the Lake land, and that the statement in the opinion that Combs is shown to have operated the ferry by means of a windlass from the Lake land is error. Wilber, Lake and other witnesses state that when the partnership was operating the ferry they attached one end of the cable to the Lake land and operated the ferry with a windlass therefrom; and Combs testifies: "When I bought the ferry outfit, I went to where Wilber, Cowdrey, Keener, Gray and Jones had attached the wire cable to a tree on the Lake land, and took the said cable loose from said tree and moved it further back upon the bluff on Lake land, and there fastened it to an iron bar in the rock, and have ever since held possession of it."

The court found as a fact that Cowdrey & Company placed Cornell in possession of the ferry, and Cornell placed Combs in possession of it. There is no evidence whatsoever in the bill of exceptions that Combs took the windlass from the Lake land when he took possession. In fact, the appellee seeks to show the incorrectness of the statement in the opinion by some of the unauthenticated evidence, which is improperly copied into this transcript. But the court can not, and does not, notice that. Even if the windlass was moved to the other side of the river, it would not change the fact of possession, only the extent of it.

Motion for rehearing is denied.