W. N. McCrary, Complainant, Appellant, *v.* Quinten Harrell *et al.*, Defendants, Appellees.

(*Nashville,* December Term, 1932.)

Opinion filed July 19, 1933.

432

McGugin & Evans and Shannon & Tubb, for complainant, appellant.

S. L. Peeler, M. C. Simpson and J. R. Morris, for defendants, appellees.

Mr. Justice Swiggart delivered the opinion of the Court.

The original bill in this cause was filed by W. N. McCrary, operator of a public ferry across the Tennessee River between points in Humphreys and Benton Counties, to enjoin the operation of a competing ferry by T. W. Sanders.

The ferry involved is known as the Trotter's Landing

ferry and is a link in State Highway No. 1, extending from Nashville to Memphis. For some years prior to the filing of the bill the complainant had been operating a ferryboat, in alliance with O. P. Lashlee, owner of land on the opposite bank of the river and operator of a similar boat. Shortly before the bill was filed, in October, 1929, complainant procured a franchise from the Quarterly County Court of Humphreys County, authorizing him to operate his ferry.

The two principal grounds relied upon for the injunction are that the defendant Sanders has no valid franchise to operate a ferry, and that his landing place on the east bank of the river, in Humphreys County, is the private property of complainant, so that the landing of the ferryboat at that point is a continuing trespass on complainant's property. Numerous dependent or cognate issues are made by the pleadings, which will be noticed later.

The Chancellor sustained the defendant's claim to a franchise and right of landing, and dismissed the complainant's suit. The Court of Appeals ruled the contrary, and granted complainant a permanent injunction, restraining defendant from operating his ferry. Both parties filed petitions for *certiorari* in this Court, which writs we have heretofore granted.

The statutory law controlling the rights of the parties is to be found in sections 1241-1243 of the Code of 1858, carried into the Code of 1932, without change, at sections 3004-3006. We quote from the Code of 1858:

"1241. The County Court shall authorize the owner of any ferry landing, or owner of land on each side of a river where a ferry has been or shall be established, to erect a ferry or ferries at said landings.

"1242. When the banks are owned by different persons, each owner shall be authorized to keep a ferry, and shall be bound to keep the opposite bank, as well as his own bank, in complete repair; for which purpose full power and authority are hereby given to each owner respectively.

"1243. And each owner may transport from and to either bank all persons, with their effects, applying to either of them for transportation across such ferry, and may land his ferry-boat at the place on the opposite bank that is cut and prepared for that purpose, and only at that place, unless prevented by high water or unavoidable accidents."

These sections of the Code find their origin in Acts 1807, chapter 25. Section 1 of that statute made it the duty of the several county courts to authorize the owner of the land on either bank to erect a "ferry or ferries," and provided: "and the said ferry keepers are hereby authorized to land their boats on the opposite banks of the rivers."

Section 2 of the Act of 1807 directed that when a ferry is established at a point where a public road crosses a river, and the banks are owned by different persons, "each person shall be authorized to keep a ferry, and bound to keep his own bank in complete repair, . . . and at the same time allow to the holder of the opposite bank free and uninterrupted privilege of landing his boat or craft on either of the banks: *Provided,* he lands at such place on the bank as is or may be cut and prepared for that purpose, unless prevented by high water or other unavoidable accidents."

The right to establish and operate a public ferry, at common law a franchise of the crown, is a right of the

State, and is conferred upon individuals by the county court as an agency of the State. "Whether a ferry shall be established or not depends upon the will of the public and the convenience of the community, not upon any claim of individual right." *Nashville Bridge Co.* v. *Shelby,* 18 Tenn. (10 Yerg.), 280.

There is therefore no absolute right even in the owner of the land on both banks to operate a public ferry across a navigable stream. The right appurtenant to the land is only a preferential right, as against strangers to the title, to be exercised only in the event the county court deems it to the public interest that a ferry be established. And the franchise may be granted to a stranger, if the owner of the bank does not demand it for himself. *Sparks* v. *White,* 26 Tenn. (7 Humph.), 86, 90.

The preferential right of the owner of the bank to demand the franchise for himself is not defeated or detroyed by the existence of an easement for a public highway or wharf at the ferry landing. *Memphis* v. *Overton,* 11 Tenn. (3 Yerg.), 386.

The quarterly county court, vested by law with jurisdiction to establish, continue or discontinue ferries, is deemed in law the tribunal best qualified to exercise that power, and its reasonable exercise of jurisdiction may not be judicially controlled. The early statutes, including that of 1807, tended to destroy monopoly and to "countenance the free and liberal spirit of laudable competition." *Blair* v. *Carmichael,* 10 Tenn. (2 Yerg.), 306.

These principles are reaffirmed and the earlier cases reviewed in *Guinn* v. *Eaves,* 117 Tenn., 524, 101 S. W., 1154.

It appears from the record in the case before us that the state highway, approaching the east bank of the

river in Humphreys County, is maintained by the State to the top or edge of the bank, which is the high-water mark, and that the highway authorities have left it to complainant, as operator of the ferry, to maintain a roadway on the bank to the low-water mark. This burden is, under the statutes cited, assumed by the holder of a ferry franchise. Complainant is the owner of the land on each side of the highway.

Complainant's franchise, granted by the County Court of Humphreys County, purports to be an exclusive franchise. He also has entered into a contract with the State Commissioner of Highways and Public Works, purporting to grant him the exclusive right and privilege of operating a ferry as a link in the state highway.

The Chancellor and Court of Appeals have concurred in holding that neither of these facts constitutes an obstacle to the rights claimed by the defendant. We also concur in these rulings. The statutes cited clearly withhold from the county court any power to grant an exclusive franchise to the owner of one bank of a river, to the exclusion of the owner or owners of the other bank in another county. And there is nothing in the statutes defining the powers of the Commissioner of Highways which would divest the several county courts of their jurisdiction of ferries. This jurisdiction, so long established and recognized, may not be destroyed by implication, arising merely from the establishment of a state highway system by statutes which make no mention of ferries.

Sanders was granted a franchise to operate his ferry by the Quarterly County Court of Benton County, in January, 1930, after this suit was commenced but before the final hearing by the Chancellor. The Court of

Appeals held that Sanders could not rely upon that franchise because his rights must be adjudicated as of the date the suit was commenced. The cases cited by the Court of Appeals for this ruling hold that a complainant may not have affirmative relief because of matters arising after the filing of his bill, unless such matters are brought into the case by a supplemental pleading. *Bannon* v. *Jackson*, 121 Tenn., 381; *Atkinson* v. *R. R. Employes Mutual Relief Society*, 160 Tenn., 158, 22 S. W. (2d), 631. But this rule can have no application when facts arising during the pendency of a suit are relied upon by a defendant, in opposition to the granting of an injunction, which must act prospectively. The sole prayer of complainant's bill is for an injunction. No redress is sought for alleged wrongs committed prior to the filing of the bill, and no objection was offered to the evidence of defendant's franchise on the ground that it was not relevant to the defenses set up by the answer. In *Levisay* v. *Delp*, 68 Tenn. (9 Baxter), 415, the mere fact that the defendant, as the owner of one bank of a river, had the right to apply for and obtain a ferry franchise, was considered sufficient to authorize the denial of an injunction restraining his operation without a franchise, in the suit of the owner of the opposite bank who held such a franchise. We think, therefore, that defendant was entitled to prove and rely upon his franchise in opposition to complainant's bill.

The highway on the Benton County side, approaching the river from the west, runs between the lands of O. P. Lashlee, on the north, and the lands of Gay Sanders, on the south. The ferry landing used by Sanders is reached by an extension of the highway, with very little change of direction, while to reach the landing used by complain-

ant, the roadway turns to the north several hundred feet, along the bank of the river.

Gay Sanders is the wife of the defendant, T. W. Sanders. She is a person *non compos mentis*, and has been a patient of a state institution or hospital for more than ten years. She is without regular guardian, and has one living child who, being an adult, has apparently acquiesced in her father's possession and control of the property. The defendant has had uninterrupted control and possession of the land since his marriage, more than thirty years ago.

It was ruled by this Court in *Pattison* v. *Baker,* 148 Tenn., 399, 255 S. W., 710, that, since the married woman's property Acts of 1913 and 1919 (Acts 1913, chapter 26; Acts 1919, chapter 126), a husband has no right of possession or control over the property of his living wife, except with her consent. On this premise the Court of Appeals sustained complainant's contention that Sanders owns no land on the west bank of the river, and that therefore he is not entitled to hold or exercise a franchise to operate a ferry, under the statutes cited.

In *Guinn* v. *Eaves, supra,* it was held that a franchise to operate a ferry may be granted to one of several tenants in common, and that the operator of a competing ferry has no standing to protest that the co-owners of the river bank were not included in the franchise.

The object of the statutes defining the jurisdiction of the county courts to establish ferries, as construed in the cases we have cited, was to procure adequate service to the public and to confer upon owners of the land at the site of a ferry a preferred right to the franchise. We see no reason for giving to the word "owner," as used in the quoted sections of the Code, a technical meaning

or limitation. . A tenant for years, in lawful possession, would answer the definition, as against the claims of one asserting no interest or title in the land. It might be difficult to define the status of Sanders, in possession of his incompetent wife's lands by virtue of the marriage relation, still existing, but we would surely be loath to declare such possession unlawful at the suit of a stranger to the title. Giving effect to the spirit of the statutes, we think the county court was correct in treating his application for the franchise as that of the owner of the land. We decline to rule otherwise in the exercise of our jurisdiction as a court of equity, responding to an appeal for purely equitable relief.

Complainant assigns as error that the Court of Appeals erred in holding that defendant's franchise was not rendered ineffective by writs of *certiorari* and *supersedeas* issued by the Circuit Court of Benton County, on petition of complainant and O. P. Lashlee to review the action of the quarterly county court in granting the franchise.

This contention rests upon certified copies of the writs, filed as exhibits to testimony. The petition for the writs is not in the record before us. The writ of *supersedeas* is addressed only to county officers and directs them to "desist from proceeding further in the execution of the judgment." The defendant Sanders is not named in the writs, and they were not served upon him. The Court of Appeals ruled that Sanders was not made a party to the proceeding and was, therefore, not bound by the writs, citing *Davis* v. *Reaves,* 75 Tenn., 585, 588, and Gibson's Suits in Chancery, sec. 564. The language and form of the writ seem wholly inappropriate, standing alone, to suspend the franchise granted to Sanders,

and, as stated, the petition upon which the writs were issued is not before us. In this situation we think the Court of Appeals was justified in disregarding the writs, in so far as the present action is concerned.

The Chancellor found from the evidence that Trotter's landing, used by Sanders as the landing place for his ferryboat on the east side of the river, was a public landing place and had been so used by the public for seventy-five or eighty years, "without let or hindrance." The record includes abundant evidence to support this finding. The only evidence relied upon as being to the contrary is that, in the days of commercial steamboat traffic, the owners of the land exacted a "bankage fee" for freight loaded and unloaded at the landing. But we think it clearly appears that this charge was made for services rendered in connection with the storing and caring for freight deposited for delivery or transportation. There is no evidence that any fee or charge was ever made against boats or other craft for the privilege of landing for the discharge and taking on of passengers or freight.

The Court of Appeals did not review this finding of fact by the Chancellor, but held that the existence of a public landing at that point would "not give Sanders a right to operate a public ferry across the river."

Complainant, sixty-six years of age at the date of his testimony, has lived within a few miles of the ferry landing all his life, except a few years during which he resided at the county seat. He testified that there had been a road to "Trotter's Landing" so long as he could remember; that the landing had been established by Mitchell Trotter in 1865 or 1870.

The easement of a public road leading to the bank

of a navigable stream includes, in our opinion, the right of a licensed public ferry to receive therefrom and discharge travelers and their vehicles, and to make landings necessary for that purpose; and the making of such landings at the terminus of the roadway is not an increase of the burden of the easement on the fee of the land.

Complainant is not without authority for the contrary of this proposition. He cites: *Pipkin* v. *Wynns,* 13 N. C. (2 Dev.), 402; *Cooper* v. *Smith,* 9 Serg. & R. (Pa.), 26, 11 Am. Dec., 658; *Root* v. *Comw.,* 98 Pa. St., 170, 42 Am. Rep., 614; *Chess* v. *Manown,* 3 Watts (Pa.), 219; *Douglass, Appeal,* 118 Pa., 65, 12 Atl., ——; *Prosser* v. *Davis,* 18 Iowa, 367; *Prosser,* v. *Wapello County,* 18 Iowa, 327; *California Nav. & Imp. Co.* v. *Union Transfer Co.,* 105 Cal., 433, 58 Pac., 936, 46 L. R. A., 825.

The cases cited from North Carolina and Iowa do not support complainant's position. They hold that the easement of a public road to a landing does not destroy the preferential right of the owner of the fee to obtain a franchise to operate a ferry. This is the holding of our case of *Memphis* v. *Overton, supra,* and is an entirely different question from that involved in the landing of the ferryboat under franchise granted to the owner of the land on the other side of the river. There is no effort made in the case before us to interfere with complainant's franchise, granted to him as the owner of the fee of the land traversed by the road.

The holding of the Pennsylvania cases cited was criticized in 3 Kent, 421, note c, where the learned author referred to the ruling in *Peter* v. *Kendall* (1827), 6 Barnw. & Cresw., 703, 108 Eng. Reprint, 610, that a ferryowner has the right to land in a public highway, as "the most

reasonable conclusion upon the right to the use of a public highway to which a ferry is connected."

In *Clark* v. *White* (1869), 5 Bush, 353, the Court of Appeals of Kentucky ruled that land appropriated to a public road is not subjected to an additional burden by the landing of a ferryboat on it, nor put to a different purpose from that for which it was appropriated. To the same effect are *Lake* v. *Combs,* 84 Ark., 21, 104 S. W., 544, and *Hale* v. *Record,* 67 Okla., 48, 168 Pac., 420. The point was so considered by BALDWIN, J., in *Patrick* v. *Ruffners,* 2 Rob. (Va.), 209, 40 Am. Dec., 740, 745, saying, *arguendo*: "No injustice is done by this doctrine to the owner of the soil over which a public road passes; for what injury does he sustain by the use of the public easement for the passage through, any more than to or from, the watercourse?" The point was likewise ruled in *Mills* v. *Learn,* 2 Oregon, 215, the court saying: "We deem the ferry a part of the road; without it, the road is useless, and the location has failed in its object. The landings are upon the highway and within its lines, and the distinction is a very shadowy one, between stepping from the land upon a boat, and from thence upon the land, and stepping from land to land, especially when all valuable rights are saved in other ways by our laws, perhaps as a part of a compensation to the landowner. The owner of the land cannot go upon that landing and build abutments, or lay a wharf. Surely no diversion of use has been made, no appropriation different from the first great purpose of having a safe and speedy line for public travel and convenience."

The text of Farnham, Waters and Water Rights (1904), vol. 1, sec. 302, recognizing and reviewing the conflict of authority, concludes: "It would seem that the

true rule should be that, so far as the ferry can land and discharge its passengers without doing more than merely bringing the boat to shore and permitting the passengers to disembark upon the highway, the owner of the fee has no cause of complaint; but that, so far as it is necessary to place permanent structures upon the highway and make an exclusive occupation of the land belonging to the abutting owner, he has a right to object.''

In the case before us, it does not appear that the defendant, in the operation of his ferry, does anything more than land his boat for the reception and discharge of passengers and vehicles.

While this Court has not given an express ruling on the subject under consideration, we are of opinion that our statutes and cases indicate an assumption by the public and courts generally that the law of this state is in accord with the conclusion we have herein reached. The statute of 1807, quoted hereinabove, expressly provided that the owner of a ferry landing, where the stream was crossed by a public road, was bound to ''allow to the holder of the opposite bank free and uninterrupted privilege of landing his boat or craft on either of the banks.'' This statute was in force until the adoption of the Code of 1858, which, by section 1243, continued the reciprocal right of landing on either bank, without restricting it to landings in public roads. With these statutes in force, the owner of land taken for a public road, leading to the water's edge, would have been bound to recognize that the right of landing for public ferryboats was included in the easement appropriated. And so we think this right of landing in a public road was obviously assumed by the Court in *Memphis* v. *Overton,* 11 Tenn. (3 Yerg.), 386, wherein it was observed that if land on the opposite

bank of the Mississippi River "be appropriated by the sovereign power as an easement for the public use, for the purpose of passage and intercourse," the citizens of Tennessee "have the same right of landing on it as a highway that the citizens of a sister state have." Assumption of the existence of the right is also manifest in *Guinn* v. *Eaves,* 117 Tenn., 524, in the rulings made on pages 531 and 532.

Sanders had operated a ferry intermittently for many years, and from 1924 to 1929 leased his landing to complainant and Lashlee. He claimed a prescriptive right to operate his ferry, without regard to his franchise of January, 1930. The Court of Appeals found that the evidence does not show continuous operation for a length of time sufficient to create prescriptive rights. In this finding of fact we concur, and it is therefore unnecessary that we consider whether the statutes of this State permit the recognition of a prescriptive right to operate a ferry.

Our conclusion is that for the reasons herein stated the complainant is not entitled to the injunctive relief prayed in his bill. The decree of the Court of Appeals is accordingly reversed, and the decree of the Chancellor, dismissing the bill, with costs, affirmed.

The Chancellor ordered a reference to ascertain defendant's damages during the time his ferry was idle under a temporary injunction. That injunction was dissolved in October, 1929, prior to the issuance of the franchise to defendant in January, 1930. We think, therefore, that the defendant is not entitled to damages because of the temporary injunction, and the order for reference will not be renewed.