Land Co. v. Interurban Co.

SOUTH MEMPHIS LAND CO. *v.* MEMPHIS INTERURBAN CO. *et al.*

(*Jackson.* April Term, 1916.)

1. **COVENANTS. Covenants running with land. Binding force.**
Covenants running with the land bind even purchasers at sales *in invitum.* (*Post, pp.* 363, 364.)

Cases cited and approved: Shelby v. Hearne, 14 Tenn., 512; Bream v. Dickerson, 21 Tenn., 126; Cronin v.. Watkins, 1 Tenn. ch., 119; Hite v. Parks, 2 Tenn. ch., 374; Brooks v. Smith, 1 Shan. Cas., 158; Doty v. Railroad, 103 Tenn., 564; Cicalla v. Miller, 105 Tenn., 255; Clapp v. Wilder, 176 Mass., 332.

2. **RAILROADS. Conveyances. Construction. Conditions subsequent. Right of way.**
A contract to which deed for a right of way referred, whereby a land company granted an interurban railroad a right of way "on the following conditions," that it would grade the way, etc., with a forfeiture providing for a breach of condition, which necessarily implied the right of re-entry, created conditious subsequent, rather than covenants running with the land, so that a purchaser in insolvency proceedings and its successors were not affected thereby. (*Post, pp.* 364-366.)

Cases cited and approved: Blanchard v. Railroad Co., 31 Mich., 43; Emerson v. Simpson, 43 N. H., 475; McCue v. Barrett, 99 Minn., 355; Woodruff v. Trenton Co., 10 N. J. Eq., 489; Randall v. Wentworth, 100 Me., 177; Trustees of Union College v. New York, 65 App. Div., 553; Hammond v. Railroad, 15 S. C., 10.

Case cited and distinguished: Gray v. Blanchard, 8 Pick., 284.

135 Tenn.—23

Land Co. v. Interurban Co.

3. DEEDS. Estates on condition. Creation.

While the words "this conveyance is upon the condition" are usually held to create an estate on condition, they do not necessarily create one, but may be so controlled by other words in the instrument as to fail of that effect. (*Post, pp.* 366-372.)

Cases cited and approved: Episcopal City Mission v. Appleton, 117 Mass., 326; Sohier v. Trinity Church, 109 Mass., 1; Chapin v. Harris, 8 Allen (Mass), 594; Stanley v. Colt, 5 Wall., 119; Laberee v. Carleton, 53 Me., 211.

Cases cited and distinguished: Cromwell's case, 2 Co., 71; Bear v. Whisler, 7 Watts (Pa.), 144; Merritt v. Harris, 102 Mass., 326; Blanchard v. Railroad Co., 31 Mich., 43; Emerson v. Simpson, 43 N. H., 475; McCue v. Barrett, 99 Minn., 355; Trustees of Union College v. N. Y., 65 App. Div., 553.

4. DEEDS. Estates on condition. Creation.

The words relied on as creating the condition on which an estate depends must not only be such as of themselves would create a condition, but must be so connected with the grant as to qualify or restrain it, and a condition may be created by reference to a condition contained in another instrument, as by reference in a deed to an agreement to convey, with recital that the deed is made pursuant thereto. (*Post, pp.* 366-372.)

---

FROM SHELBY

---

Appeal from the Chancery Court of Shelby County. —F. H. HEISKELL, Chancellor.

McKELLAR & KYSER and SIVLEY & EVANS, for appellant.

METCALF & METCALF, BURCH & MINOR and WRIGHT, MILES, WARING & WALKER, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

The bill alleges that complainant, being the owner of a large body of land lying immediately south of the corporate limits of the city of Memphis, which had been platted into several subdivisions, conveyed, on the 28th day of February, 1909, a right of way over and across its lands to the Lakeview Traction Company, and that contemporaneously therewith a contract was entered into between the parties which, with the deed for the right of way, constitute one instrument. The deed for the right of way reads:

"That for and in consideration of the sum of $5, and and other good and valuable considerations, to us in hand paid, at the time of the execution of these presents, receipt of which is hereby acknowledged, the South Memphis Land Company, a corporation of Tennessee, hereby grants, warrants, and conveys unto the Lakeview Traction Company, a corporation of Maine, its successors and assigns, an easement in and to a strip of land in Shelby county, Tennessee, south of the city of Memphis, twenty-five feet in width, as and for a right of way being twelve and one-half feet on either side of a line particularly described as follows: (Here follows a description of the right of way, beginning in the center of Nonconnah creek, and running northward to Axie avenue.)

"The grant of said strip is for a right of way for railroad purposes, and is made subject to all terms and conditions of a certain contract which is executed

contemporaneously with this deed and is made a part hereof.''

The contract referred to was first drawn in the form of an agreement to convey, and subsequently was adopted as the contract between the parties at the time that the deed for the right of way was made. This origin of the matter will account for the language ''will grant'' now to follow. The contract, so far as necessary to quote it, reads:

''That the South Memphis Land Company will grant to the Lakeview Traction Company a right* of way twenty-five feet in width from Axie avenue, on the north, to its line on the south, upon the lines indicated on your blueprints accompanying, on the following conditions:

''(1) That the Lakeview Traction Company will within twelve months from date of this agreement grade a right of way having a width of twenty-eight feet at all points except at the crossing of the I. C. Belt Line and the Union Belt Line, extending from Axie avenue to Brooks avenue; it being understood that fifteen feet of this right of way is for wagon road purposes, and must be of the grade the same as that of the traction company.

''(2) That the Lakeview Traction Company provide a safe passage for vehicles of fifteen or more feet at the crossings of the I. C. Belt Line and the Union Belt Line; it being intended that this passageway may occupy the same space as that occupied by the traction company's tracks at these two points.

"(3) That the traction company at its option shall, within five years, construct and grade an avenue along this right of way of seventy-five feet in width, of grade the same as that of the traction company. The object of this paragraph is to provide for the completion of an avenue seventy-five feet wide by the traction company within five years from the date of this contract, between the north and south lines of the land company's property. After the avenue shall have been so widened, the right to use any part of the right of way for wagon purposes, except crossings, shall cease.

"(4) That the dirt from the cuts must be used to make the necessary fills, and none shall be taken off any of the property of the land company which is below grade, to make fills, without the consent of the land company; the object of the paragraph being to prevent borrow pits along the right of way.

"(5) That the Lakeview Traction Company is granted this right of way for the construction and operation of an interurban road, the cars of which are to be electrically driven, and at no time shall engines driven by steam be allowed.to operate on the track or tracks located thereon, nor shall any power be used to operate cars over these tracks, except such as may be permissible over the streets of the city of Memphis, and, further, that no transfer shall be made of the right herein granted to any steam railroad.

"(6) That no freight cars will be parked or allowed to stand on the right of way covered by this contract.

"(7) That the fare for passengers between South Memphis and Memphis, and between stops in South Memphis, shall at no time be higher than the fare within the city limits of Memphis.

"(8) That the freight rates to and from South Memphis shall not be higher than to and from Memphis proper.

"(9) That any street or steam railway railway shall have the right to cross the tracks of the traction company on the right of way herein granted.

"(10) That the traction company shall provide and maintain street crossings of this right of way.

"(11) That the traction company will begin operations of cars on its tracks, on the right of way herein granted, not later than twenty months after the signing of this contract, and the failure to so operate its cars for a period of thirty days or more after their operations have begun shall cause this contract to be canceled, and right of way revert to the land company.

"(12) That the traction company will at no time allow any nuisance along the lines of its tracks on the right of way covered by this contract.

"(13) That passenger cars such as are used on modern interurban lines will be operated on the tracks of the traction company over the right of way covered by this contract.

"(14) That the traction company will agree that the land company may have the option until August 2, 1908, of taking the contract for the grading of the line from Axie avenue to Nonconnah creek, except

immediately underneath the Memphis & State Line Railroad tracks, for twenty cents per cubic foot.''

The purpose of the land company was to construct an interurban railway from Lakeview, Miss., north to the city of Memphis, in Tennessee.

It is alleged that the line was graded on complainant's land, but that, in fact, the railway was constructed from Lakeview, Miss., only as far north as Dempster avenue, in complainant's subdivision, which was more than a mile short of Axie avenue; that on the 12th day of August, 1910, complainant granted to the Lakeview Traction Company a temporary license to proceed westward from Dempster avenue to a point where it would strike the line of the Memphis Street Railway Company at Lauderdale street, in the city of Memphis; that the railway company has since entirely abandoned the line north of Dempster avenue in violation of the terms of the contract above set out; that after the granting of the license above mentioned the Lakeview Traction Company became insolvent, and was placed in the hands of a receiver, and its property was sold and was purchased by H. D. Minor, trustee for the bondholders of the insolvent company, at a bid of $150,000; that this sale was at the October term, 1912, reported and confirmed in the chancery court of Shelby county; that the purchasing bondholders constituted a corporation under the name of the Memphis interurban Railway Company, one of the defendants in the present bill, and the title was vested in the said company; that the Memphis Inter-

urban Company operated the property as above indi-
cated until about the 10th day of April, 1913, shortly
after which date the property was sold to a new cor-
poration organized under the laws of the State of Del-
aware by T. H. Tutwiler and his associates under
name of Memphis & Lakeview Railway Company; that
in the conveyance which was exeuted to the latter com-
pany it undertook to relieve itself "from the condi-
tions, terms, and covenants referred to in said deed."

It is alleged in the bill that the various provisions
of the contract were covenants running with the land,
and that all the defendants were bound thereby includ-
ing the last-named company.

It is alleged:

"That practically all of the conditions contained in
the said contract of July 23, 1908," being the contract
previously quoted, which was originally dated July
23, 1908, "have been breached by the Lakeview Trac-
tion Company and its assigns, and that, notwithstand-
ing the said breach by the said Lakeview Traction
Company and its assigns, the defendants the Memphis
Interurban Company and the Lakeview Railway Com-
pany have taken possession of the said right of way,
and have declined and refused to comply with and
carry out the conditions of said contract and the cove-
nants running with said real estate, and that it and
the other defendants are attempting by reason and on
account of said change of corporations and of corpo-
rate names to obtain the benefits of said contract, and
to take, hold, and use the property of your orator, and

at the same time not observe the conditions, covenants, and agreements therein contained.''

It is further alleged:

''That the Memphis Interurban Company under said sale above referred to took possession of the tracks of the Lakeview Traction Company, laid upon the above-described land, and operated its cars over the same, and that the defendant Memphis & Lakeview Railway Company, under the contract and deed from the Memphis Interurban Company, has taken charge of the same, and is now operating its cars over said right of way, and that the Memphis & Lakeview Railway Company has stated to your orator that it is not using any other line for the operation of its cars to a connection with the Memphis Street Railway, except that set forth in the above license (that is, from Dempster avenue westward, as above mentioned), and it declines and refuses to extend its line of railway north through the property of your orator over and along the right of way deeded to the Memphis & Lakeview Railway Company, which has been graded, but states that it will operate over the line set forth in said license, claiming authority so to do, as your orator is informed, under the deed from the Memphis Interurban Company.''

The purpose of the bill was to obtain a specific performance of the contract, but, if that relief could not be granted, then, in the alternative, damages for the failure of performance.

There were numerous grounds of demurrer filed by defendants, all of which were sustained by the chancellor, and the bill dismissed.

We need mention only two of the grounds referred to, one that the provisions set out in the contract were not covenants running with the land, and the other that they constituted conditions subsequent.

On appeal the court of Civil appeals reversed the decree of the chancellor in part; and held that, while the defendants were not bound to extend the line further north than Dempster avenue, yet they were bound to comply with the other provisions of the contract as to the part of the line over which they had actually constructed the railway, and particularly that they were bound to construct the avenue of seventy-five feet along the right of way so far as the line had been actually constructed. The court of civil appeals was of opinion that the various provisions of the contract constituted covenants running with the land.

The complainant's contention is that the deed and accompanying contract, constituting together but one instrument by the express agreement of the parties, should be construed as one, and that, so construed, the provisions of what may be styled the contract paper are covenants running with the land, and binding on the present owner, the Memphis & Lakeview Railway Company. The defendants insist that, if the provisions referred to are in law covenants, they are not such covenants as run with the land, but only of a personal nature, binding solely upon the Lakeview Trac-

Land Co. v. Interurban Co.

tion Company; that they do not affect the Memphis Interurban Company, that purchased under the insolvency proceedings instituted against the Lakeview Traction Company, or the defendant Memphis & Lakeview Railway Company, that purchased from the Memphis Interurban Company; that the defendants are not affected by such alleged covenants, for the additional reason that their purchase at the court sale referred to was under a decree rendered in a general creditors' proceeding, which was binding on the complainants and all others having demands against the property of the Lakeview Traction Company, since under such a proceeding the purchaser buys free of all debts of the insolvent corporation which are not liens on the property. It is further contended for the defendants that the provisions of the contract paper referred to constitute, not covenants, but by the very terms thereof conditions subsequent, and that complainant's rights are such only as may be enforced under that aspect.

It is obvious that the fundamental question is whether the provisions referred to are covenants running with the land, or simply conditions. If the former, they would, of course, bind even purchasers at sales *in invitum* (*Spencer's Case*, 5 Coke, 16; 1 Smith, Leading Cas., 129, 131, 132, resolution No. 6), and hence the Memphis Interurban Company and the purchaser from it, the defendant Memphis & Lakeview Railway Company. The authority just referred to is the great leading case on the general subject, to which

all other cases refer, directly or indirectly, and on which all of them are based. We have only a few cases on the subject (*Shelby* v. *Hearne*, 6 Yerg. [14 Tenn.], 512; *Bream* v. *Dickerson*, 2 Humph. [21 Tenn.], 126; *Cronin* v. *Watkins*, 1 Tenn. Ch., 119; *Hite* v. *Parks*, 2 Tenn. Ch., 374; *Brooks* v. *Smith*, 1 Shan. Cas., 158; *Doty* v. *Railroad*, 103 Tenn., 564, 53 S. W., 944, 48 L. R. A., 160; *Cicalla* v. *Miller*, 105 Tenn., 255, 58 S. W., 210), and in none of them is a different rule suggested.

But this view of the subject need not be further considered, since we are clearly of the opinion that the provisions referred to are conditions subsequent, and not covenants at all.

It is often extremely difficult to determine whether a provision is one or the other, a condition or a covenant, owing to the disinclination of the courts to enforce forfeitures, resulting in many confusing precedents, which, by subtle construction, have found covenants, or restrictions merely, in language apparently, on first consideration, at least, expressing only conditions subsequent. This phase of the matter will be found well illustrated in the opinions, original and dissenting, and authorities cited therein, in the case of *Clapp* v. *Wilder*, 176 Mass., 332, 57 N. E., 692, 50 L. R. A., 120–127.

In the case before us, however, we think there is little room for doubting that the contract created conditions subsequent, rather than covenants. *Gray* v. *Blanchard*, 8 Pick. (Mass.), 284; 1 Leading Cas. in

Am. L. of Real Prop., 115, and note; *Blanchard* v. *Detroit, Lansing & Michigan Railroad Company*, 31 Mich., 43, 18 Am. Rep., 142; *Emerson* v. *Simpson*, 43 N. H., 475, 82 Am. Dec., 168, 80 Am. Dec., 184; *McCue* v. *Barrett*, 99 Minn., 355, 109 N. W., 594; *Woodruff* v. *Trenton Co.*, 10 N. J. Eq., 489; *Randall* v. *Wentworth*, 100 Me., 177, 60 Atl., 871; *Trustees of Union College* v. *New York*, 65 App. Div., 553, 73 N. Y. Supp., 51; *Hammond* v. *Railroad*, 15 S. C., 10, 31–35.

The words used in the contract "on the following conditions" are those long recognized as strongly indicative, even if not wholly conclusive, of a purpose to create an estate on condition; and this conclusion is strengthened and rendered well-nigh irresistible by the provision for a forfeiture contained in the 11th paragraph.

In *Gray* v. *Blanchard*, supra, the words were "provided, however, this conveyance is upon condition that," etc. It was contended there, as here, that these words introduced only a covenant. But Chief Justice Parker said:

"This is untenable. The words are apt to create a condition; there is no ambiguity, no room for construction; and they cannot be distorted so as to convey a different sense from that which was palpably the intent of the parties. . . . 'This conveyance is upon the condition,' can mean nothing more nor less than their natural import; and we cannot help the folly of parties who consent to take estates upon onerous conditions, by converting conditions into cove-

nants. . . . A clause of re-entry is not necessary
to make a condition. *Proviso, ita quod, subconditione,*
make the estate conditional.''

But, as already stated, in the case before us, we
have a forfeiture provided for breach of the conditions
laid down,. which necessarily implies the right of re-
entry.

It is true, as stated in the note referred to, that
while the technical words quoted are usually held to
create an estate on condition, they do not necessarily
create one, but may be so controlled by other words
in the instrument as to fail of that effect. In *Crom-
well's Case,* 2 Co., 71, a, it was settled that:

Though the words mentioned are apt to make a con-
dition, ''yet, to confer upon them this effect, three
things are necessary: First, that the clause wherein
they occur has no dependence on another in the deed,
but stands originally by and of itself; second, that
it be the language of the feoffor, donor, lessor, etc.,
or may be attributed indifferently to both; and, third
and principally, that it be compulsory to enforce the
bargainee, feoffee, donee, etc., to do an act the omis-
sion of which may work a forfeiture.''

Cited also to the same point: *Episcopal City Mis-
sion* v. *Appleton,* 117 Mass., 326; *Sohier* v. *Trinity
Church,* 109 Mass., 1; *Chapin* v. *Harris,* 8 Allen
(Mass.), 594; *Stanley* v. *Colt,* 5 Wall., 119, 18 L. Ed.,
502.

All of the marks mentioned occur in the case before
us. It is true that the words relied on as creating a

condition must not only be such as of themselves
would create a condition, but must be so connected
with the grant as to qualify or restrain it (*Laberee*
v. *Carleton,* 53 Me., 211); but "a condition may be
created by a reference in an instrument to a condi-
tion contained in another paper, as by reference in a
deed to an agreement to convey with a recital that
the deed is made in pursuance thereof." (*Bear* v.
*Whisler,* 7 Watts [Pa.], 144; *Merritt* v. *Harris,* 102
Mass., 326). In the case we have in hand we have
seen there is not only a reference in the deed to such
an agreement, but that agreement is expressly made
a part of the conveyance itself, by the very terms of
the deed.

It is said further, in the elaborate note referred to:

"A condition may be made of almost anything that
is not illegal or unreasonable, on the principle that
the owner of land who is not obliged to transfer it at
all may attach to its transfer such conditions and
restrictions as he pleases, and in view of which the
grantee takes the land, so long as they are not in
contravention of any policy of law."

Here it may be useful to give some illustrations
from the cases we have cited.

*Blanchard* v. *Detroit, Lansing & Michigan Railroad
Company:*

"But this conveyance is made upon the express con-
dition that said railroad company shall build, erect,
and maintain a depot or station house on the land here-
in described, suitable for the convenience of the public,

and that at least one train each way shall stop at such
depot or station each day when trains run on said
road, and that freight and passengers shall be regu-
larly taken at such depot."

This language was held to create a condition sub-
sequent.

*Emerson* v. *Simpson:*

"Provided, nevertheless, if the said George Simpson
shall neglect to keep up and maintain forever, at his
own expense, a good and lawful fence, constructed of
wood or stone, on the line between his own land and
land of said Ames and James Emerson, this deed shall
be void," etc.

Held, a condition subsequent.

*McCue* v. *Barrett:*

"In consideration of the foregoing release and con-
veyance of the above-described strip of land to him,
James Barrett for himself, his heirs and assigns, here-
by agrees to and with Edward Malz, his heirs and as-
signs, that he will keep and maintain at his own ex-
pense, from this time forth forever, a good and lawful
fence (describing the kind of fence), and to rebuild
and repair the same at any and all times when such
rebuilding and repairing shall be necessary. . . .
And it is further mutually agreed and understood by
and between the parties, their heirs and assigns, that
in case Barrett, his heirs and assigns, shall fail to
build and maintain such fence, or shall refuse to build
or repair the same when necessary, then and in that
case it is mutually understood and agreed that this

agreement shall be void, and of no effect, and all
rights hereby conveyed and released by Malz . . .
shall revert to Malz, his heirs and assigns forever.
The said release and conveyance of said strip of land
to said party of the second part is upon the express
condition of the building and maintaining said fence,
and the failure to so build and maintain the same and
repair the same to work a forfeiture of all rights
thereunder.''

The foregoing language was held to create a con-
dition subsequent.

*Woodruff* v. *Water Power Co.*:

The owner of a valuable farm on the river Dela-
ware, conveyed to the Trenton, Delaware Falls Com-
pany, their successors and assigns, a portion of his
farm adjoining the river, and upon which they had
located their main raceway, ''subject, nevertheless,
to the following proviso: That if the said main race-
way shall not be made on said premises in conformity
to the act incorporating said company, the said lands
and premises shall revert to the said George Wood-
ruff, his heirs and assigns, and also that the said party
of the second part shall erect, maintain, and keep in
good repair a safe, convenient, and substantial bridge
across said main raceway, at a place to be designated
by the said (grantor), and also cause to be made and
kept in order a convenient landing place on the side
next the river Delaware, so that wagons may at all
times safely pass over thereon, and shall also erect and

maintain all necessary fences across the said main raceway, together with fences across the said premises, and shall also permit the said party of the first part to use the said raceway to give drink to his cattle, and also to take ice therefrom to fill his icehouse.''

The grantees cut the main raceway, and it subsequently came into the possession of the defendants, as assignees of the grantees, by virtue of several acts of the legislature. The bill alleged that the grantees had always refused to perform ''their said covenants and agreements,'' and prayed a specific performance, and compensation for the injury sustained. It was held that there were no covenants contained in the deed on the part of the grantees; that the language was appropriate to create a condition, and that as if to avoid any doubt the legal consequences of a breach in violation of the condition was inserted; that the court could not enforce its specific performance in a deed of that which for nonperformance there might be a forfeiture of the estate; that the grantor had fixed his own remedy, and could forfeit the estate at his pleasure.

*Trustees of Union College* v. *New York:*

The land in question was conveyed in 1873 to Long Island City, the predecessor of New York City. After the description the deed contained this clause:

''Said plat of land is to be used by said Long Island City for the purpose of building a city hall thereon, and this conveyance is made upon the express condition that, in case the said plot of ground above described shall ever cease to be used by said Long Island

City for a city hall, or other similar city buildings, then, and in that case, the said plot of land shall revert back to the parties hereto of the first part as if this conveyance had not been made."

This was held to create an estate on condition subsequent, and subject to forfeiture for failure to comply with the condition.

*Hammond* v. *Railroad:*

A deed conveyed a strip of land to a railroad company, to them, their successors and assigns forever, "provided always, and this deed is upon the express condition," that a certain system of drainage was to be kept up by the railroad company. It was held that this created a condition subsequent in the deed, and the conveyance was voidable by the grantor upon condition broken.

It is true that a condition subsequent is usually relied on by the grantor, but occasionally, as here, and in *Blanchard* v. *Detroit, etc., Railroad Company,* supra, by the grantee or his assigns, for the purpose of defeating an action based on covenant. We cannot know whether the defendant, to defeat a future enforcement of the conditions, relies upon some ground of estoppel, or upon the fact that the complainant is not likely to deprive itself of such benefits as it already enjoys by the maintenance of the road through a considerable part of its subdivision. We have but to determine the case upon the principles of law that govern it, and leave the parties to their legal rights as so determined.

On the grounds stated, we think the chancellor reached the correct conclusion, and his decree must be affirmed, and that of the court of civil appeals reversed.