M. J. FARRAR, COMPLAINANT, APPELLEE, *v.* N. C. & ST. L. RY., DEFENDANT, APPELLANT.

(*Nashville,* December Term, 1930.)

Opinion filed March 14, 1931.

314

Sam Tigert, for complainant, appellee.

W. B. Lamb, Jr., Fitzgerald Hall and Frank Slemons, for defendant, appellant.

Mr. Justice Chambliss delivered the opinion of the Court.

Upon abandonment of a branch of its railway lines extending through Lincoln County, the defendant removed its rails and cross ties, and also executed a deed

316

conveying two small lots of land adjacent to its right of way to one J. C. Cardy. Complainant sets up in his bill that he is the owner of the lands out of which the lots, and a portion of the railway's right of way, were originally carved, and seeks (1) to recover the ties and rails removed, or their value, and (2) to have cancelled as a cloud the conveyance to Cardy.

Complainant's theory with respect to the ties and rails is that they were fixtures which, if removable at all, could be removed only prior to the abandonment of the right of way, and that an attempt to quitclaim to the County the right of way prior to the removal of the ties and rails, despite the rejection by the County of the quitclaim, constituted an abandonment by the defendant of the right of way, that title reverted to complainant, and all right of removal was lost.

The insistence with respect to the two lots is that the conveyance thereof to the railway (made thirty years before to a predecessor in title), had been so conditioned with respect to use that a reversion of the title took place by reason of the failure to devote the property to the use designated and to construct improvements stipulated for thereon.

■ The Chancellor sustained a demurrer to the bill in so far as it set up rights to the ties and rails, but overruled the demurrer to that part of the bill which sought to cancel the conveyance of the lots. Both complainant and defendant Railway have appealed. Clardy, who was made a defendant, did not perfect an appeal, and it is said here for Farrar that the decree below is final as to the issue in which he was involved. But it is quite apparent that the Railway had an interest as the grantor to Clardy, and its appeal brings up the whole case.

Conceding, but not deciding, that ties and rails laid by a railroad along a right of way become at least *quasi*-fixtures, we think there can be little doubt that, regardless of the exact nature of the title held by the railroad to the land used as a right of way, whether absolute, or as an easement,—or of the manner of its acquisition, the right to remove ties and rails placed thereon is clear, prior to complete abandonment of the land for railway purposes. The claim that such abandonment had taken place is rested on the attempted execution of a quitclaim to the County.

Was this attempt to quitclaim to the County, not accepted and therefore without legal delivery, such an abandonment as to preclude subsequent removal of the ties and rails? Not only was this quitclaim not a completed transfer of title, but it appears that the instrument contained on its face an express reservation of the right to remove the ties and rails. No such lapse of time is alleged to have taken place as in itself to support a presumption of abandonment. The case for complainant appears to be rested as before stated on the effect to be given the attempt to quitclaim to the County.

We are constrained to agree with the learned Chancellor that this quitclaim cannot be given the effect contended for by complainant. First, because, even if *quasi*-fixtures, they come within the rule of intention well recognized in this State. In the recent case of *Savage & Co. v. Mayfield*, 157 Tenn., 676, this Court re-affirmed the rule announced by Cooper, J., in *Cannon v. Hart*, 1 Tenn. Chn., 22, and quoted with approval from the opinion by Mr. Justice Neil in *Bank v. Wolf*, 114 Tenn., 270, that "the rights of the parties to fixtures and buildings depend, not on the manner in which they are attached to

the freehold, but upon the character of the parties, the intention in erecting the improvements, and the uses to which they are put." The distinction recognized in *Savage* v. *Mayfield, supra,* is applicable here, between erections on land, "for a purpose which contemplates the use thereof on the property in pursuance of the purposes of the possession only, and those made by an owner under circumstances which imply permanency."

 Whatever the character of the title held by a railroad Company to its right of way, its ties and rails are placed thereon "in pursuance of the purposes of the possession only." The nature of these *quasi*-fixtures is such as to preclude the idea that they are placed with the intention that on abandonment of the possession for railway purposes, they are to remain and inure to the use and benefit of the freehold. They are not susceptible of use as fixtures except for railway purposes. Being in their very nature limited to use by the railway, certainly no intention can be imputed of a purpose to affix them permanently to the freehold, and allow them to remain where and when they will not be susceptible of use as such. While no case in this State is cited, the great weight of authority recognizes the right of a railway company, on relinquishment or abandonment of a right of way, to remove the rails and ties. Mr. Elliott, in his Second Edition, Vol. 2, p. 637, thus states the rule:

"The presumption is that rails and similar structures placed by a Railroad Company upon land taken by it for a right-of-way, are affixed to the land with the manifest intention to use them in the operation of the railroad, and hence are not to be regarded as fixtures forming a part of the real estate."

In *Wiggins* v. *Ohio, etc., Ry.,* 142 U. S., 396, 35 L. Ed., 1055, the Court said:

"We agree with the Court below that the petitioner is not entitled to recover the value of the rails removed by the Receiver from the premises upon Bloody Island. They were laid there under a mere easement granted by the petitioner, and obviously with no intention that they should become a part of the realty. As between landlord and tenant, or one in temporary possession of lands, under any agreement whatever for the use of the same, the law is extremely indulgent to the latter with respect to the fixtures annexed for the purpose connected with such temporary possession."

Other authorities to the same effect will be found noted in 21 A. L. R., p. 1089, and 66 A. L. R., p. 42. Some of these decisions are rested on the holding that such installations are subject to removal as trade fixtures, and others apply the rule of intention.

██ But learned counsel rely strongly on the limitation of the right of removal to the period of possession, in application of the general rule, and the alleged abandonment before removal in the instant case, by the attempted quitclaim. The right of removal being otherwise clear, we are now called on to declare a forfeiture of this right because of this alleged act of abandonment. Forfeitures are not favored. The quitclaim did not take effect as such, its acceptance having been refused. But treating it as a declaration of purpose or intention to abandon, can we refuse to give effect to the repudiation implied of any such intention by the expressed reservation of the right of removal? Any notice carried to complainant by this instrument of a purpose to abandon, carried also notice of the intention to reserve and remove this property. If it should be conceded that a technical abandonment took place, the circumstances do not justify

the enforcement by a Court of equity of a resultant forfeiture. We have reviewed the authorities exhaustively compiled by learned counsel for complainant, but none of these sustain a conclusion contrary to that of the Chancellor on this branch of the case.

This brings us to a consideration of the relief granted by the Chancellor in cancellation of the conveyance to Clardy. This issue must be determined by the construction to be given the language of the deed conveying the lots in question to the predecessor in title of the defendant Railway,—specifically, whether this language creates a condition subsequent, or a covenant merely. The deed is exhibited with the bill and the conveying clause reads:

"For and in consideration of the Nashville, Chattanooga & St. Louis Railway agreeing and binding itself, which it does by the acceptance of this deed, to erect a depot upon the lands herein conveyed, or a part of same, and using the lands herein conveyed for depot purposes, switch yards, etc., and the further consideration of one dollar to us in hand paid, the receipt of which is hereby acknowledged. We, L. C. Strong and wife, Mary C. Strong, have bargained and sold and do hereby sell, transfer and convey unto said Nashville, Chattanooga & St. Louis Railway the following described parcels of land, lying and situated in the 13th Civil District of Lincoln County, Tennessee, and bounded as follows:"

After giving a description of the two parcels of land, the *habendum* clause reads: "To have and to hold under the said Nashville, Chattanooga & St. Louis Railway and its assigns forever."

The covenant and warranty clauses are as follows:

"We covenant that we are lawfully seized and possessed of the land herein conveyed, have a good right to

convey the same, and that the same are unencumbered, and further covenant and bind ourselves, our heirs and representatives, to warrant and forever defend the title to said land unto the said N. C. & St. L. Railway and its assigns against the lawful claims of all persons whomsoever.''

It will be observed that the conveyance is not in terms on condition. Also, that it contains no words providing for reversion or forfeiture. We have two comparatively recent Tennessee cases discussing fully and clearly this determinative question, *Land Company* v. *Interurban Co.*, 135 Tenn., 353, and *Carnegie Realty Co.* v. *Railroad*, 136 Tenn., 300. The question was also discussed in the course of the opinion in the still more recent case of *Southwestern Presbyterian University* v. *Clarksville*, 149 Tenn., 256. On the authority of these cases we think there can be little doubt that the provisions of the deed now before us, contained in the conveying clause only, for the erection of a depot on the lands conveyed, and the use of the lands "for depot purposes, switch yards, etc." must be held to create a covenant, and not a forfeiture, or condition subsequent, as held in the Carnegie case above cited, opinion by Mr. Justice GREEN. In that case, both the conveying and the *habendum* clauses provided for the erection, maintenance and operation of a passenger depot on the lands, but the Court said that, "it seems that the Railroad Company did not take this land upon condition that a Union Passenger Depot should be erected and maintained; that is to say, their estate did not depend on compliance with such condition.'' It was held that "the words used in this deed created a covenant, and not a forfeiture or condition subsequent,'' and that the suit was properly treated as one for breach of covenant.

In the instant case the suit is not so brought or treated, the relief sought being limited to a claim of forfeiture, or reversion, specifically the cancellation of the deed made by the defendant Railway Company to Clardy. But if the suit could be treated, as in the Carnegie case, as one for breach of covenant, complainant would be met by a distinction which, under our holdings, precludes relief on this theory. The covenant in this deed cannot be said to run with the land. It is personal only to the grantees thereunder. In the Carnegie case it was said that "this Court has, in several decisions, adhered to the Second Resolution in the Spencer's Case, 5 Coke, 16, and held that a covenant in respect to something not in case must specifically bind the assignees of the covenantor in order for such covenant to run with the land." In this essential regard the deed now before us differs from that in the Carnegie case.

Moreover, it is plausibly insisted that the covenant is shown by the bill to have been at least partially performed, and that in failing to complain of inadequate performance of the covenant for the period of thirty years which elapsed between the making of the deed and the filing of this bill, the complainant is estopped by laches.

In the Southwestern Presbyterian University case, among numerous decisions reviewed is that of *Murdock* v. *Mayor and Alderman of Memphis*, 7 Cold., 483. In the opinion in that case will be found an exhaustive discussion, both of the terms necessary to create a condition subsequent, and of conditions once performed. In that case, and in others reviewed in the Southwestern University case, the proposition is very clearly established that the recitation in a deed that it is in consideration of a certain sum, and that the grantee is to do certain things

therewith or thereon, does not create "an estate upon condition, not being in terms upon condition, nor containing a clause of re-entry or forfeiture." It is also shown that a permanent, in the sense of perpetual, compliance with provisions of a deed prescribing a particular use, will not be exacted by the Courts, either with respect to railways or other uses, but that a substantial compliance for such a period as evidences a good faith purpose, and as might have been reasonably in the contemplation of the parties, is sufficient to defeat a forfeiture.

The question involved having been so fully treated in the opinions in the above three cases so recently decided by this Court, we deem it unnecessary to further review the authorities, or to re-cite the many cases therein cited and quoted from.

It results that the decree of the Chancellor must be affirmed in so far as he denied the right to recover the cross ties and rails, and reversed in so far as he granted relief with respect to the two lots, and the bill be dismissed.