**David MORROW and Janet Neal, Plaintiffs and Counterclaim Defendants,**

v.

**CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RAILWAY COMPANY and Trustees of the Cincinnati Southern Railway, Defendants, Counterclaim Plaintiffs, and Third–Party Plaintiffs,**

v.

**Ruth M. Blakeley, Third–Party Defendant.**

**No. 3:95–cv–0198.**

United States District Court, E.D. Tennessee.

March 31, 1997.

Charlie Allen, Jr., Oneida, TN, for plaintiffs.

Arthur G. Seymour, and James E. Wagner, Frantz, McConnell & Seymour, Knoxville, TN, for defendants.

Rebecca Byrd, Oneida, TN, for third-party defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JORDAN, District Judge.

The court tried this civil action without a jury on September 23, 1996. Before the trial, the court considered and denied the defendants' motion for summary judgment, and then treated the evidentiary material submitted in support of and in opposition to this motion for summary judgment as part of the record at trial. After the trial, the court allowed the parties some time within which to negotiate a settlement of the case, but the parties have been unable to agree. The court therefore issues these findings of fact and conclusions of law.

The defendant Trustees are the owners and lessors of a railroad right of way in Scott County, Tennessee. The defendant CNO & TP is the Trustees' lessee of the tracks on this right of way. The plaintiff Morrow is a purchaser of a parcel of real property in Scott County, and the plaintiff Neal is Morrow's tenant on part of this parcel.[1] The

1. After the commencement of this civil action, the plaintiffs married one another.

**443**

third-party defendant Blakeley is Morrow's vendor.

The defendants removed this civil action to this court from the Scott County, Tennessee Chancery Court under 28 U.S.C. 1441. There is complete diversity of citizenship, and the defendants have shown that the cost of the burden on the interstate carriage of freight by rail which they say would be imposed by granting the plaintiffs the relief sought exceeds the jurisdictional amount. *See Bedell v. H.R.C. Limited,* 522 F.Supp. 732, 735–36 (E.D.Ky.1981), and authorities cited therein; *see also* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3703 (2d ed.1985). The court therefore has jurisdiction of the subject matter of this civil action under 28 U.S.C. § 1332.

The greater part of what the court will call the Morrow parcel lies to the west of what the court will call the CNO & TP right of way. This western part of the parcel is accessible only by means of what the plaintiffs call a "road and railroad crossing" at railroad milepost 202.3, which crosses the CNO & TP right of way from a public highway on the east side of the tracks to the Morrow parcel on the west side. Evidence in the record shows that this crossing has existed for decades, that there are no easements or rights of way of record providing for ingress and egress to and from the western part of the Morrow parcel, and that, even assuming that Morrow could acquire necessary easements or rights of way from adjacent landowners on the western side of the CNO & TP tracks, the topography of this area would make it extremely difficult or impossible to build a new road to the western part of the Morrow parcel. The plaintiffs seek in this litigation to prohibit the closing of this crossing, on the theory that the crossing is a public road, and also on theories of easement by prescription, estoppel, and necessity.

Blakeley and the plaintiffs deraign their titles or interests in land from the same grantors as do the defendants. In a deed recorded on May 15, 1906, by which G.W. Strunk and Lucinda Strunk, also the predecessors in title of Blakeley and the plaintiffs[2], conveyed title to real property to the defendant Trustees, the conveyance is stated to be in consideration of $500.00 cash in hand paid by the defendant CNO & TP, referred to in the deed as the Railway Company, "and in further consideration of the agreements on the part of the Railway Company, hereinafter contained." One of these stated agreements is "1. That [the Railway Company] will build and maintain, for the benefit of the grantors herein, their heirs, executors and assigns, an overhead crossing over the tracks of the Cincinnati Southern Railway, at Station 6379 + 00 of the proposed new centre line of said railway."

Affidavit evidence submitted by the defendants in opposition to the relief sought by the plaintiffs shows that the defendant Trustees have no record of granting permission to place over the railroad right-of-way a crossing at or near milepost 202.3 in Winfield, Scott County, Tennessee; that the Trustees have no record of the construction or maintenance of an overhead crossing at this location; that the defendant CNO & TP likewise has no records of granting permission to place a crossing at this location, or of the construction or maintenance of an overhead crossing, other than a license agreement entered into between CNO & TP and L.L. Chitwood on May 1, 1920, which granted a license stated to be a "personal privilege," not subject to transfer or assignment without the consent of the railway company, and which provided that it created a private crossing only, not a public highway; and that a search of CNO & TP's records dating back to 1909 has not revealed an agreement (other than the license agreement with Mr. Chitwood) authorizing a crossing over the mainline track at milepost 202.3. Other affidavit evidence submitted by the defendants shows that the existence of the present crossing, which the plaintiffs desire to keep open, burdens the defendant interstate carrier by rail (CNO & TP) by reducing the speed at which trains can pass through this area, which imposes a substantial cost on the movement of freight by the carrier.

2. A portion of the Morrow parcel is derived from the Strunk tract.

The defendants rely on *Scott County, Tennessee v. Cincinnati, New Orleans and Texas Pacific Railway Company,* 915 F.Supp. 928 (E.D.Tenn.1995) *(per* Jordan, USDJ), in which this court held that the plaintiff county was not entitled to prevent the same two defendants as in the case at bar from closing two other grade crossings. The court held, *id.* at 932, citing *Southern Ry. Co. v. Vann,* 142 Tenn. 76, 216 S.W. 727 (1919), *Cincinnati, N.O. & T.P. Ry. Co. v. Sharp,* 141 Tenn. 146, 207 S.W. 728 (1918), and *Nashville, C. & St. L. Ry. v. McReynolds,* 48 S.W. 258 (Tenn. Ch.App.), *affirmed, id.* (Tenn.1898),

> A right in a railroad right of way cannot be acquired by prescription. Because a railway company is a common carrier serving a public purpose, it may not be estopped to assert its interest in its railroad right of way, or be held to have abandoned its right of way, on the basis of others' non-interfering use of the right of way over time, or on the basis of nonuser of the right of way.
>
> \* \* \* \* \* \*
>
> [I]f a railway company has a right to use its right of way for railroad purposes when and as needed, regardless of having not made use of the entire right of way during past years, then it seems to follow that when a railway company needs to use its railroad for the operation of trains at higher, authorized speeds, it may close grade crossings in the interest of safety at the higher speeds.

The *Scott County* decision does therefore address these plaintiffs' theories of easement by prescription and estoppel based on the long existence and use of this crossing. This court's decision in *Scott County* does not, however, decide all of the issues in the case at bar, for the issue in *Scott County* was whether the grade crossings there in question were owned by one or both of the defendants, or had somehow become parts of the public roads which crossed the railroad tracks at those crossings. In the case at bar, the plaintiffs have not shown that the crossing at milepost 202.3 has become a public road. The court's prior decision does not address the plaintiffs' theories here that the defendants are estopped by the representations of railway company agents from closing the milepost 202.3 crossing, and that the plaintiffs are entitled to an easement by necessity, the western part of the Morrow parcel being otherwise landlocked. What is most important, there was nothing in *Scott County* similar to the language in the Strunks' deed quoted above, which appears to require the defendant CNO & TP to build and maintain an overhead crossing as part of the consideration for the Strunks' conveyance.

Addressing this last distinction first, the defendants say that the plaintiffs may not enforce any obligation of the defendant CNO & TP stated in the 1906 deed from the Strunks because of the application of statutes of limitations and the doctrine of laches. The defendants cite several Tennessee statutes and *Farrar v. N.C. & St. L. Ry.,* 162 Tenn. 313, 36 S.W.2d 95 (1931).[3] *Farrar,* however, is not authoritative with respect to the issue presented. In *Farrar,* the complainant sought to recover land conveyed away by the defendant railway company after its abandonment of railroad operations on the land, arguing that the railway company had failed to satisfy a condition in the deed of conveyance from him to the railway company requiring the construction of a depot and use of the land for certain railroad purposes. The consideration clause in this deed from the complainant to the railway company provided that part of the consideration was the grantee railway company's "agreeing and binding itself, which it does by the acceptance of this deed, to erect a depot upon the lands herein conveyed, or a part of the same, and using the lands herein conveyed for depot purposes, switch yards, etc." The Tennessee Supreme Court distinguished between a condition subsequent and a mere covenant so as to avoid a forfeiture of the land conveyed to the railway company. *Id.* at 320, 36 S.W.2d 95.

In *dictum,* after noting that the complainant had not sued on a theory of breach of

---

**3.** The court finds that Tennessee law governs these substantive issues in this civil action. 28 U.S.C. § 1652.

covenant, the *Farrar* court stated that had the complainant sued on such a theory, he would not have succeeded, because a covenant in a deed cannot be said to run with the land, as opposed to a covenant personal only to the grantee/covenantor, unless the covenant specifically binds the assignees of the covenantor. *Id.* at 322, 36 S.W.2d 95. The court added that the covenant had been partially performed, and that the complainant's failure to complain of inadequate performance for 30 years would work an estoppel by laches against him. *Id.,* 36 S.W.2d 95.

In the case at bar, while the covenant in question does not refer to the defendant CNO & TP's assignees, it does, unlike the covenant in *Farrar,* bind this defendant to build and maintain the overhead crossing "for the benefit of the grantors . . . , *their heirs, executors and assigns."* (Emphasis added.) The rule stated in the *dictum* in *Farrar,* that a covenant in a deed does not run with the land unless it specifically binds the covenantor's assignees, is derived from the second resolution in *Spencer's Case,* 5 Coke 16. *Farrar, supra,* 162 Tenn. at 322, 36 S.W.2d 95. In *Carnegie Realty Co. v. Carolina, C. & O. Ry. Co.,* 136 Tenn. 300, 189 S.W. 371, 372 (1916), cited with approval in *Farrar, supra,* the Tennessee Supreme Court stated this rule to be "that a covenant in respect to something not in esse must specifically bind the assignees of the covenantor in order for such covenant to run with the land." However, in *Carnegie Realty Co.,* the court found this requirement satisfied by the *habendum* clause in the deed, "To have and to hold unto said [grantee railway companies], their respective successors and assigns forever, for union passenger depot purposes, with the obligation to erect, maintain, and operate thereon a passenger depot." *Id.* at ——, 189 S.W. at 372. The Tennessee Supreme Court proceeded to hold that the suit for breach of covenant was not time-barred by the six-year statute of limitation regarding suits for breach of covenant (*see* Tennessee Code Annotated § 28-3-109(a)(3) in the modern code), because "[t]he obligation is continuous, and the right to sue for its breach runs along with the breach, and will include damages sustained within six

years of the date of suit." *Id.* at ——, 189 S.W. at 373.

In an older case, *Doty v. Chattanooga Union Ry. Co.,* 103 Tenn. 564, 567, 53 S.W. 944 (1899), the Tennessee Supreme Court looked "at the situation of the parties, and what was intended by the provisions in question" to find a covenant running with the land, even though the grantee's agreement stated in the consideration clause of the deed "to run daily passenger trains on and along the right of way granted" made no mention of the grantee's assignees, while the *habendum* clause referred to "the said Chattanooga Union Railway Company, its successors, and assigns forever."

In the case at bar the obligation to run a daily passenger train over this particular piece of road was a burden upon the easement or privilege of owning and operating the right of way. . . . The road might have paid *"in solido"* in money or otherwise for this right of way once for all, but it stipulated to render certain service, that service to be continuous, and it is bound by its agreement. And so is any assignee or transferee bound to render the same service so long as it claims and enjoys the privilege, even though the word "assigns" is not used. . . . [T]he breach by the original grantee of the obligation to render the service did not put an end to that obligation and convert the landowner's right to merely a chose in action for the breach already committed, and even if it did, he might waive such right, or delay it, and bring the action at such time as he chose and against such parties as, at the time being, might be liable for such breach.

*Id.* at 571–72, 53 S.W. 944. Citing decisions from other jurisdictions, the *Doty* court suggested that strict compliance with the rule in *Spencer's Case* is not required in cases involving easements, and that the rule does not mandate use of the word "assigns," but that "any equivalent words manifesting an intent to bind an assignee will suffice." *Id.* at 577–78, 53 S.W. 944. The Tennessee Supreme Court distinguished earlier, stricter applications of the rule in *Spencer's case* in Tennessee cases in which the covenantors had bound themselves to build structures not *in*

*esse* at the times of the conveyances, as follows:

> In these cases there was a covenant or agreement (so far as it was absolute and not optional) to do a certain specified thing—as, to build a house or wall or pay for improvements. There was no continuing and daily accruing consideration or agreement on either side, there was no continuing obligation on either, as in this case.... [Here,] [t]he land is burdened by the easement. This can only be offset by the benefit to the servient estate, and this is a continuing burden and benefit.

*Id.* at 581–82, 53 S.W. 944.

The court finds authorities cited by the defendants inapposite. In *Northcutt v. Massie*, 201 Tenn. 638, 301 S.W.2d 355 (1957), the suit was on an unrecorded contract to sell land, in which the vendors agreed "to make a warrantee (sic) deed ... soon as a proper survey can be had or produced conveying the same." The vendees did not sue for specific performance for 16 years, and the court held the action barred by the statute of limitation and by laches, holding that the obligation was to obtain a survey within a reasonable time.

In *Lowe v. Wilson*, 194 Tenn. 267, 250 S.W.2d 366 (1952), the plaintiffs sought a declaration that a clause prohibiting the sale of intoxicants on the conveyed premises and providing that "this agreement is a part of the consideration for this sale" stated a merely personal covenant on the part of the grantees. The Supreme Court agreed with the plaintiffs, citing, *inter alia, Farrar, supra,* and *Carnegie Realty Co., supra,* concerning the rule in *Spencer's Case,* and noting also, "Covenants restricting the use of land and preventing its free and unrestricted enjoyment are not favored, all will be strictly construed against the restriction." 194 Tenn. at 269, 250 S.W.2d at 367.

This court finds in the 1906 deed from the Strunks to the defendant Trustees a clear statement of the parties' intention to convey property for a right of way for use for railroad purposes by the defendant CNO & TP, with the latter making a covenant running with the land to construct and maintain an overhead crossing. That the parties to the conveyance (including the defendant CNO & TP, which also signed the deed) intended such a covenant is also clear from the context in which the conveyance was made. The Strunks' tract being burdened by a railroad right of way running through it, the grantors naturally desired some continuous assurance of being able to travel to and from the eastern parcel of the tract from and to its western parcel. The fact that the right of way imposed a perpetual burden which required such a corresponding perpetual burden on the defendant CNO & TP is established by the very dilemma in which the plaintiffs in this civil action now find themselves.

The covenant to construct and maintain an overhead crossing is nothing like a covenant restricting the use of land. While it is on its face a covenant to build something not *in esse* at the time the covenant was made, the cases calling for strict application of the rule in *Spencer's Case* are distinguishable. Here, the covenant to construct and maintain the overhead crossing has since 1906 been intricately connected with the grant and continued existence of the railroad right of way, for, in the absence of some kind of a crossing, the right of way has created the risk of rendering the western parcel of the Strunks' tract inaccessible, as if the grant of the right of way had amounted to a taking of the entire western parcel. For this reason, this case is more like the railroad right of way cases in which covenants running with the land were found based on undertakings concerning railroad operations on the rights of way. Furthermore, the language used in the Strunks' 1906 deed meets the requirements of *Spencer's Case.*

The plaintiffs are therefore not barred by statutes of limitations or by laches from enforcing this covenant. The consideration for the covenant, the grant of the railroad right of way, has continued to the present; the obligation of the covenant therefore continues, and a failure to fulfill this obligation is a continuous and continuing breach. There has been no partial performance as in *Farrar* to commence the running of a period within which a burdened landowner must bring suit. The plaintiffs do not seek money damages, and so no six-year limitation on such relief applies here.

**448**

The defendant Trustees and the defendant CNO & TP can hardly complain of a finding of a covenant running with the land in this case, being the original grantees and the original covenantor, respectively, named in the Strunks' 1906 deed. The plaintiffs cannot be faulted for their timing in bringing this action in which a 90–year–old obligation to construct and maintain an overhead crossing is of such importance; they only recently acquired any interest in the burdened estate. The affidavit testimony of the third-party defendant Blakeley [doc. 26 at 2], While it might not provide any basis for finding an estoppel in this case, helps to explain why a finding of laches is improper here. According to Blakeley, representations were made to her "by the various representatives of the railroad that they would be obliged to build an overpass if they should ever close the existing route to the back of our property. . . ." As long as the grade crossing which is the original subject of this civil action has remained open, the defendant CNO & TP has in some manner provided ingress and egress to and from the land on the western side of the tracks. As soon as the grade crossing is closed, however, there will be a failure of the consideration for the original grant of the railroad right of way, but the burden of the right of way will remain.

The court's finding of a covenant running with the land to construct and maintain an overhead crossing in this case renders it unnecessary to address the plaintiffs' other theories of estoppel by representation and easement by necessity. The defendants' arguments concerning federal preemption of regulations concerning the operation of freight trains carry no weight in light of the existence of the covenant, an express agreement. The testimony of the third-party defendant quoted above suggests how this court, in the exercise of its discretion while sitting in equity, should fashion relief in this civil action.

The plaintiffs asked for declaratory and injunctive relief prohibiting the defendants from closing the presently existing grade crossing at railroad milepost 202.3. They stated through counsel at the last conference before this court that they would be satisfied with preservation of the existing grade crossing. The plaintiffs are entitled to judicial enforcement of the covenant requiring the construction and maintenance of an overhead crossing. The court will therefore declare that the plaintiffs are entitled to construction and maintenance of an overhead crossing as required by the 1906 deed from the Strunks to the defendant Trustees, but that the defendants may elect, in lieu of complying with the covenant in this deed to construct and maintain an overhead crossing, to keep open the presently existing grade crossing at railroad milepost 202.3. If the defendants so elect, the maintenance of the grade crossing and any modifications of it done for railroad purposes will be at the defendants' expense.

The court will enter an order in accordance with these findings of fact and conclusions of law.