556

WALTER WILKEY et al., Complainants, Appellees, v.
CINCINNATI, NEW ORLEANS & TEXAS PACIFIC
RAILWAY COMPANY, et al., Defendants, Appellants,
—340 S. W. (2d) 256.

Eastern Section.  June 29, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

Whitaker, Hall & Haynes, Chattanooga, and C. P. Swafford, Dayton, for appellant Railway Company.

George F. McCanless, Attorney General, and James M. Glasgow, Assistant Attorney General and Solicitor, for appellant State Commissioner of Highways.

Walter Cheers and O. W. McKenzie, Dayton, for appellees.

McAMIS, P. J. The State Commissioner of Highways and C. N. O. & T. P. Ry. Co. appeal from a decree of the Chancery Court of Rhea County permanently enjoining the Railway Company and the City of Dayton from closing a railway crossing on West Second Avenue in Dayton.

Wilkey and other property owners who had used the crossing on West Second Avenue in going to and from schools and the business sections of Dayton for as long as fifty years filed the bill against the Railway Company for an injunction requiring it to remove barricades placed in the street. Later, the bill was amended to make the City of Dayton a party defendant and to require it to show cause why a mandatory injunction should not issue enjoining it to remove the barriers and to keep West Second Avenue open for the use of complainants and any other persons lawfully entitled to its use.

The Railway Company answered the bill denying that it had obstructed the crossing and asserting that the State

Department of Highways or its contractor had closed the crossing by erecting barriers on both sides of its tracks in connection with the elimination of the grade crossing for State Highway 30 on West Second Avenue and after the State, acting under contract with the Railway Company, the Federal Government and the City of Dayton, had rerouted Highway 30 to West Sixth Avenue, four blocks to the north, where an underpass had been constructed and opened for public travel and which was available for the use of complainants and the public generally.

The City of Dayton answered the amended and supplemental bill denying that it had participated in any way in the closing of the crossing and asserted that the crossing had been closed by the State Commissioner of Highways, in the proper exercise of the power conferred by statute upon the State Department of Highways to eliminate grade crossings. It was admitted that the City had never passed an ordinance permitting the closing of the crossing.

At the hearing on the Railway Company's motion for a dissolution of the injunction on bill and answer on August 1, 1959, the Chancellor refused to dissolve the injunction and reserved a rulling on whether the City should be required to remove the obstructions until a hearing on the merits which was set for August 31, 1959. By the same order the Honorable George F. McCanless, Attorney General for the State, was invited to intervene in behalf of the State Department of Highways.

On the date of the hearing on the merits, the State filed an answer and a cross bill against the City of Dayton alleging in substance that, acting jointly, and under contract with the Railway Company, the City of Dayton and the

Federal Government, it had re-routed Highway 30 over West Sixth Avenue where it had constructed at great expense an underpass. It was specifically alleged that this public improvement project had been undertaken in reliance upon a resolution of the governing body of the City of Dayton agreeing to close the grade crossing on West Second Avenue upon completion of the underpass. It was admitted that the crossing had been closed by the State's contractor as required by his contract with the State, and it was asserted that this action was a lawful and proper exercise of the power conferred by statute upon the State Commissioner of Highways to eliminate grade crossings but, if not, an injunction should issue requiring the City to close the crossing by ordinance or, in the alternative, respond to it in damages. The cross bill was later dismissed by the State and need not be further noticed.

It is important to note, however, that the answer of the State Department of Highways admits that the City of Dayton is a municipal corporation organized under T.C.A. sec. 6-1801, generally known as the City Manager Act; that, under T.C.A. sec. 6-1901 (15), it is invested with power to regulate and close streets within the City and that the City had taken no action effectually closing the crossing on West Second Avenue. Thus, there emerges from the pleadings the principal question: Does the State Department of Highways retain jurisdiction over the Streets of a municipality once, but no longer, used as a part of the State Highway System? If, as the Chancellor held, this question is to be answered in the negative are complainants remitted to an action for damages for a taking by the State of their proprietary rights under power of eminent domain?

As to the first question: T. C.A. sec. 54-531 requires the State, through its Department of Highways, to "construct, reconstruct, improve and maintain streets in municipalities over which traffic from state highways is routed * * *."

T.C.A. sec. 65-1107 provides:

"Elimination of grade crossings over public highways. The state department of highways and public works through its commissioner, shall have the power to eliminate grade crossings of any railroad or interurban railway track on any of the main traveled roads designated by the commissioner as included in the general highway plan of the state, whenever, in the discretion of said commissioner, the elimination of any such grade crossing is necessary for the protection of persons traveling on any such highway or any such railroad."

T.C.A. sec. 65-1108 empowers the commissioner, upon ordering the elimination of a grade crossing, to determine the location of the crossing to be substituted.

It will be noted that T.C.A. sec. 65-1107 speaks of the elimination of grade crossings on any of the main traveled roads "designated by the commissioner as included in the general highway plan of the state * * * for the protection of persons traveling on any such highway". This language can hardly be construed as conferring the power to eliminate grade crossings on roads and streets no longer a part of the state highway system.

The powers of the commissioner with respect to grade crossings are circumscribed by these Sections. When, acting alone or in conjunction with others, the Department has eliminated an existing grade crossing by

substituting another of its selection and has re-routed the State Highway over the substituted crossing the powers conferred by the statute are exhausted. Jurisdiction over the old route then reverts to the local authority.

■ In connection with an annotation at 158 A.L.R. 533, it is said:

"State highways are usually constructed, wholly or partly, upon previously existing county or other local roads. Where a state highway has been so constructed, the general rule is that a later alteration of it will not terminate the public easement as to parts not included in the new highway. Such parts will merely revert to their former status under the care of the local authorities. Wilkinson County v. State Highway Commission (1941) 191 Miss. 750, 4 So. (2d) 298; State v. Hoblitt (1930) 87 Mont. 403, 288 P. 181; Long v. Melton (1940) 218 N.C. 94, 10 S. E. (2d) 699 (but see statute in Mosteller v. Southern R. Co. (1941) 220 N. C. 275, 17 S. E. (2d) 133); Hillsdale Co. v. Zorn (1939) 187 Okla. 38, 100 P. (2d) 436."

The foregoing comment is based upon sound principle, as well as upon very respectable authority, and we have found no authority to the contrary. We think this general rule should prevail in the absence of controlling legislation. See also 1959 supplement 25 Am. Jur. p. 69, Highways, Section 111.

But, it is said, since the City of Dayton was empowered by statute to enter into contract with the State, by resolution of its Board of Commissioners, for public works projects, its agreement with the State to close the crossing on West Second Avenue is incident to the construction of the underpass on West Sixth Avenue and is, therefore, valid and binding without an ordinance.

T.C.A. sec. 6-1603 (h) empowers municipalities to make contracts containing such terms and provisions as in the discretion of the governing body may be necessary, proper, or advisable in furtherance of any public works project for which Federal aid may be obtained. T.C.A. sec. 6-1630 provides that such contracts may be adopted by resolution of the governing bodies of municipalities.

██ Only by the most strained construction, if at all, could these statutes be held to authorize a contract to close a public street four blocks away from the project. Contracts of a municipality which tend to embarrass or control its legislative powers and duties or cede the rights of citizens are not looked upon with favor. Cf. Carter County v. City of Elizabethton, 39 Tenn. App. 685, 690, 287 S. W. (2d) 934. The right to make such a contract should not be based upon implication and a strained or unnatural construction of a statute dealing in general terms with the unrelated subject of Federal Aid projects. We can not agree that the resolution in question obviates the necessity of an ordinance closing the crossing on West Second Avenue.

As to the second question, the right of complainants to injunctive relief, a number of cases are cited by appellants holding that the obstruction or serious impairment of an easement of access to property amounts to a taking under right of eminent domain for which the landowner has his action for damages. These cases include Illinois Cent. Railroad Co. v. Moriarity, 135 Tenn. 446, 186 S. W. 1053; Knoxville Ice & Cold Storage Company et al. v. City of Knoxville, 153 Tenn. 536, 284 S. W. 866; Corporation of Sevierville v. Trotter, 170 Tenn. 431, 95 S. W. (2d) 920; Stewart v. Sullivan County, 196 Tenn. 49, 264 S. W. (2d) 217.

564

██ In all of these cases the sovereign or one of its branches or agencies constructed a public improvement of a permanent and fixed nature impairing or cutting off the right of access to private property. These cases all recognize that the State has authority to appropriate private property without instituting condemnation proceedings. Here, however, the State, through its Department of Highways, constructed a barricade easily removed, acting under what we have held is an invalid resolution of the governing body of the City of Dayton. It has never declared that in closing the crossing it was acting under power of eminent domain and the proof and all of the circumstances negative an exercise of such powers. If so, complainants would have no action for damages on the theory of an appropriation of their rights to a public use.

██ It may well be, as both the State and the Railway Company strongly insist, that it is necessary to close the crossing on West Second Avenue to promote the safety of the traveling public. If so, the responsibility for closing it remains with the local authorities.

We find no error. The decree is affirmed at the cost of appellants and the cause remanded for enforcement of the decree. (For the record, the motion to strike the bill of exceptions and to affirm on technical grounds is overruled.)

Hale and Howard, J.J., concur.