**Maggie Bernice OUTLAW, Administratrix of the Estate of L. J. Outlaw, Deceased, Plaintiff-Appellee**

v.

**LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Defendant-Appellant.**

**No. 21030.**

United States Court of Appeals, Sixth Circuit.

Sept. 29, 1971.

John B. Mack, Asst. Dist. Atty., Memphis, Tenn., on the brief, for defendant-appellant; Clarence Clifton, Asst. Dist. Atty., Memphis, Tenn., of counsel.

John B. Maxwell, Jr., Memphis, Tenn., for plaintiff-appellee; Pat H. Mann, Jr., Brownsville, Tenn., on brief; Apperson, Crump, Duzane & Maxwell, Memphis, Tenn., of Counsel.

Before CELEBREZZE, McCREE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

On April 30, 1969, plaintiff-appellee's husband was killed when a tractor, pulling a large water-filled roller, overturned, crushing him to death. The equipment had become stuck while crossing the railroad's tracks in rural Haywood County, Tennessee. The Railroad tracks crossed Steele Road, a dirt road, at a point approximately 400 feet from Highway 70. For many years Steele Road had been used to connect highway 70 with state road No. 8131. Although in recent years the middle section of Steele Road had been blocked by gaps

(removable barbed wire strands), undisputed testimony was that on occasion the entire road was used. At the time of the accident the primary use of Steele Road was as an access to the houses of Johnny Jaycocks and his niece, the only people living across the railroad tracks from highway 70.

After unsuccessfully trying to free the tractor, the deceased sought the aid of Mr. Charlie Bullock, a neighbor. Mr. Bullock helped disengage the tractor, then departed. He did not witness the overturning but soon after departing he heard a loud noise. He then returned and found the tractor overturned in a ditch on the opposite side of the tracks with the deceased crushed beneath. There were no witnesses to the fatal accident.

Appellee filed a wrongful death action in a state court. Appellant removed the case to the United States District Court. The complaint contained two counts. The first alleged common law negligence in maintaining an unsafe railroad crossing. The second count charged a violation of two Tennessee statutes imposing a duty on railroads to maintain railroad crossings "on public roads or highways." The statutes read as follows:

> T.C.A. 65–1101. *Construction and repair.*—All persons, or corporations, owning or operating a railroad in the state, are required to make and furnish good and sufficient crossings *on the public highways* crossed by them, and keep same in lawful repair at their own expense. (emphasis added).
>
> T.C.A. 65–1103. *Grading and repair —Cities and towns excepted.*—Every corporation or person operating a line of railroad within the state shall be required to grade to a level with the rails of said railroad and to keep in repair *every public road* crossing such railroad for a distance of ten (10) feet on each side of such railroad track and between the rails thereof; provided, that the provisions of this section and § 65–1104 shall not apply within the limits of any city or incorporated town. (emphasis added).

The jury awarded appellee $45,000 damages. We consider four issues on appeal.

■ First, appellant argues that neither TCA § 65–1101 nor TCA § 65–1103 is applicable because Steele Road is a private road and the statutes apply only to crossings on "public highways" or "public roads." The district court disagreed, charging the jury that as a matter of law the crossing in question was a "public" crossing. This instruction, in effect, directed the jury to find that appellant had violated TCA § 65–1103 since it was clear from the evidence that the crossing was not graded in accordance with the requirements of that statute. On the basis of essentially undisputed facts in the record deemed to be relevant on this issue, under our interpretation of Tennessee law, we agree with the district court's finding.

The Tennessee Code does not define a "public" road or a "public" highway for purposes of TCA §§ 65–1101 and 1103. Therefore, to determine the meaning of these terms under Tennessee law we must look to cases interpreting these and other Tennessee laws and to statutory definitions contained in other Tennessee statutes.

The purpose of these two statutes is "to make such crossings easy of approach, and as safe as possible in cases of emergency." Louisville & Nashville Ry. Co. v. State, 137 Tenn. 341, 193 S.W. 113 (1916). Citing TCA §§ 23–1501 et seq., and 54–904 to 925, appellant suggests that Tennessee adopts a three fold test of a "public" road: (1) payment of damages for a right of way; (2) taking or holding title to the road in trust for the public; and (3) maintaining the road for the public.

Appellee, on the other hand, contends that under Tennessee law a road is "public" if: (1) it is for the public use and benefit; (2) the right to use the road is absolute and not permissive; (3) it is maintained by the county; (4) it has been used by the public for many years; and (5) no one claims ownership.

As we read the Tennessee authorities, neither standard is entirely controlling, for there is no clear-cut definition of "public" as used in these statutes. In the absence of a statutory definition, there are numerous factors relied on by Tennessee courts to ascertain whether a particular road is public or private. *Cf.* Guinn v. Eaves, 117 Tenn. 524, 535, 101 S.W. 1154 (1906). Burkitt v. Battle, 59 S.W. 429 (Tenn.Ct.Ch.App.1900).

Taking a literal view of the term "public," many Tennessee authorities indicate that a road is public if open to the public. *See* Sumner County v. Interurban Transp. Co., 141 Tenn. 493, 213 S.W. 412 (1918); TCA § 65–1502(e). The evidence clearly suggests that Steele Road has been and is freely available for use by the public without anyone's permission.

Other Tennessee authorities look for some kind of public dedication in order to classify a road as public or private. This dedication need not be by "record evidence." Burkitt v. Battle, 59 S.W. 429 (Tenn.Ch.App.1900). It can be by "act of the public authorities, or the express dedication by the owner, or an implied dedication by means of the use by the public * * *, or by adverse user for a period of 20 years continuously creating a prescriptive right * * *." Standard Life Ins. Co. v. Hughes, 203 Tenn. 636, 643, 315 S.W.2d 239, 242 (1958) (interpreting term "public highway" in insurance policy). Contrary to appellant's assertions, no particular formalities, public ownership, or monetary settlement are necessary to constitute a dedication. *Cf. id.*: Lewisburg v. Emerson, 5 Tenn.App. 127, 132 (1927); Raht v. Southern Ry., 50 S.W. 72, 76 (Tenn.Ch.App.1897); Elkins v. State, 21 Tenn. 543 (1841). In the case at bar the testimony showed that the public had used Steele Road, without obtaining anyone's permission, for as long as anyone could remember. This indicates an implied dedication within the framework of Tennessee law.

Tennessee courts also view the presence or absence of an obstruction as a factor in determining whether a road is public or private. Although the placement of a gap across part of Steele Road could indicate that the road is private, there are authorities to the contrary. *See, e. g.,* Burkitt v. Battle, 59 S.W. 429 (Tenn.Ch.App.1900); Hill v. Hoffman, 58 S.W. 929 (Tenn.1899). In the case at bar we are primarily concerned with the nature of that part of Steele Road which crosses appellant's tracks. From highway 70 on one side of the tracks to the houses on the other side of the tracks there was apparently never any obstruction preventing the public from having free access to the road. The rather recent placement of gaps farther along the road does not automatically prevent the part of the road at issue from being "public" under Tennessee law, irrespective of any change in the nature of the remainder of the road.

Tennessee courts also frequently consider who maintains a road as a factor in determining the status of the road. The fact that a road is maintained by public authorities tends to show that it is public. *See, e. g.,* Current v. Stevenson, 173 Tenn. 250, 116 S.W.2d 1026 (1938); *cf.* Lively v. Noe, 450 S.W.2d 852 (Tenn.Ct.App.1970). *But see* Bashor v. Bowman, 133 Tenn. 269, 180 S.W. 326 (1915). In the case at bar it was undisputed that part of Steele Road was maintained by county authorities. Although, as appellant notes, the county authorities would also maintain "driveways" if requested by the owner, no such request was made with regard to Steele Road. On their own initiative "whenever it [maintenance] is required," county employees at county expense performed repairs on Steele Road from highway 70 to the houses on the other side of appellant's tracks.

Considering these undisputed factors, it is apparent that Steele Road is "public" within the meaning of Tennessee law as we interpret it. TCA §§ 65–1101 and 1103 are therefore applicable.

Appellant's second argument is that the district court erred in refusing to accept the decedent's status as a mere

licensee to whom appellant railroad owed the duty only of refraining from *willful* or *wanton* conduct. The district court refused appellee's proffered instruction and charged the jury that the railroad was liable "if injury results from a breach of the duty to use or exercise reasonable and ordinary care for the safety of the traveling public." As authority for the view that the deceased was a mere licensee, appellant cites cases from Massachusetts, Alabama, and Illinois. McCarthy v. Boston & M. R.R., 319 Mass. 470, 66 N.E.2d 561 (Sup.Jud. Ct.1946); Alabama G.S.R. Co. v. Linn, 103 Ala. 134, 15 So. 508 (1894); Atchison, Topeka & Santa Fe Railroad Co. v. Parsons, 42 Ill.App. 93 (1891). Irrespective of the questionable relevance of non-Tennessee authority in the instant action, these cases are inapposite because they all involve a *private* crossing. Here, as we hold, the decedent was killed while using a public crossing. Appellant's reliance on O'Brien v. St. Louis, I. M. & Southern Ry. Co., 5 Higgins 588 (Tenn.Ct.Civ.App.1915) is also misplaced. Contrary to appellant's position, *O'Brien* implies that under the common law in Tennessee a person utilizing a public railroad crossing is owed a duty of ordinary care. *Id.* at 597. This has been the Tennessee view for many years. *See, e. g.*, Louisville & Nashville Railroad Co. v. Evins, 13 Tenn.App. 57, 73 (1931).

Appellant's third objection is to the admission of alleged hearsay. Despite appellant's objections, at trial the district judge admitted Johnny Jaycocks' testimony about a conversation with an unidentified railroad employee. Approximately a year before the decedent was killed, another accident occurred at the same crossing. At the earlier mishap a truck became stuck on the same crossing and was hit by a passing train. Sometime after that accident Jaycocks, endeavoring to have the crossing repaired, spoke with the section foreman of a railroad crew engaged in working on the crossing. The jury was permitted to hear Jaycocks testify that the foreman said "Well, I can't fix it [the crossing] because I have to have orders to do it." Further, according to Jaycocks' testimony, the foreman said "[T]hese rocks won't help it a bit, they will roll all away, but the company still have to give me orders to do it before I can do anything to it."

 In Tennessee the admission of an agent is admissible against the principal if the statement relates to an act being performed within the scope of the agent's authority. Thurmer v. Southern Railway Co., 41 Tenn.App. 354, 293 S. W.2d 600 (1956). Here Jaycocks requested repairs from the man given the responsibility for the maintenance of the crossing. The foreman's statements about the area occurred while he was supervising maintenance work on the very crossing about which Jaycocks testified. Under these circumstances, we cannot say that the district judge erred in admitting the testimony concerning the foreman's remarks.

Finally, appellant argues that the absence of direct proof on the precise cause of the accident required the jury to speculate on how the accident occurred. Since under Tennessee law "a verdict cannot be based on speculation, surmise or conjecture," Gilreath v. Southern Railway Co., 323 F.2d 158, 163 (6th Cir. 1963), appellant urges us to set aside the jury verdict.

██ Under Tennessee law a court of appeals, considering the validity of a jury verdict, does not weigh the evidence nor decide the credibility of the witnesses. Southern Railway Co. v. Sloan, 56 Tenn.App. 380, 407 S.W.2d 205 (1965), Interstate Life & Accident Co. v. Cox, 55 Tenn.App. 40, 396 S.W.2d 80 (1965). In the case at bar we are in the posture of a Tennessee appellate court applying Tennessee law. Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Consequently, our "review is limited to a determination of whether there is any material evidence to support the verdict." Southern Ry. Co. v. Sloan, 56 Tenn.App. *supra* at 387, 407 S.W.

2d at 209. Under this perspective we cannot disturb the jury's decision. The jury in this case was presented clear and unmistakable evidence that the railroad crossing at the time of the accident was in a hazardous state of disrepair. There is direct testimony that it was rough, uneven and replete with large holes between the rails. The approaches to the crossing were steep, coming to a high point at the tracks themselves, leaving no immediate level space on either side and thus making the crossing dangerous for normal traffic. The undisputed evidence established the fact that the equipment became lodged at the crossing because of the condition of the crossing itself. It came to a stop when the tractor was unable to pull the heavy water-filled roller across a board which was allowed to protrude above the level of the first rail, although the tractor itself had cleared the farthest rail. The testimony of the witness Bullock was that he hooked his tractor to the roller and pulled it back to a point where it was no longer hung on the protruding board. This left the rear wheels of the tractor between the rails. He then started his tractor away from the scene and momentarily thereafter he heard a "rumbling." He returned and found the tractor overturned in a ditch on the opposite side of the crossing with the deceased crushed underneath. Sometime before this occurrence it was known that a train was approaching and it was necessary to send a bystander down the tracks to signal it to a stop before reaching the crossing. The evidence also establishes that between the rails there were large rocks and pieces of black top which remained after the railroad workmen had torn it up. Preparatory to laying new rails the railroad workmen had dug trenches which parelleled the rails. In addition to the large holes in the crossing, as stated, the "cross boards," parallel to the rails "stuck up" or protruded above the rails. These facts are not only established by the testimony of witnesses who examined the crossing on the day of the accident, but are graphically portrayed by a large number of photographs which were made at the crossing shortly following the accident. These photographs were introduced in evidence and were examined by the jury.

From these facts a jury, in our opinion, could reasonably conclude, without indulging in guess work or speculation that the overturning of the vehicle and the deceased's death were caused when the deceased in undertaking to go forward with his heavy equipment after it was first disengaged and quickly to remove himself from a place of extreme peril was unable to keep his vehicle under control because of the rough and uneven condition of the crossing and because of the sudden and steep decline in the roadway on the opposite side. Under such circumstances, the jury could properly find that the appellant's negligence in failing to maintain the crossing was the proximate cause of the deceased's death and that the deceased was free from contributory negligence. Cf. Southern Railway Co. v. Sloan, *supra.*

Affirmed.