**SCOTT COUNTY, TENNESSEE, Plaintiff,**

v.

**The CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RAILWAY COMPANY, and The Trustees of the Cincinnati Southern Railway, Defendants.**

No. 3:95–cv–0004.

United States District Court, E.D. Tennessee, Northern Division.

Dec. 14, 1995.

---

Mark E. Blakley, Baker, Donelson, Bearman & Caldwell, Knoxville, TN, for Plaintiff.

Arthur G. Seymour, Frantz, McConnell & Seymour, Knoxville, TN, for Defendants.

### MEMORANDUM OPINION

JORDAN, District Judge.

This civil action, a diversity action, is before the court for consideration of two opposing motions for summary judgment.

The plaintiff county commenced its civil action originally in the Scott County, Tennessee, Chancery Court, against Norfolk Southern Corporation. This originally named defendant removed the civil action to this court on the jurisdictional basis of diversity of citizenship. The parties then agreed to substitute The Cincinnati, New Orleans and Texas Pacific Railway Company (CNO & TP) as a defendant, on the ground that this rail carrier is the party which closed the two grade crossings which are the subject of this suit.

The defendant Trustees of the Cincinnati Southern Railway (Cincinnati Southern) were later added as a party defendant, in light of the fact that Cincinnati Southern (*i.e.*, these trustees) owns the right of way over which the defendant CNO & TP operates its railroad.

Most of the pertinent facts are not in dispute. In 1994, the CNO & TP closed two grade crossings in Scott County, one named the Elgin grade crossing, and the other named the Bear Creek grade crossing. The plaintiff county states in its complaint that the CNO & TP had earlier sought to obtain permission from the county legislative body to close these crossings, without success. The plaintiff takes the position that the defendant railway company was without au-

thority to close these crossings, and that the Elgin grade crossing is part of Scott County's county road system. The county seeks mainly declaratory and injunctive relief, for the convenience and safety of its citizens who live in the regions of these crossings, and who as a result of the closing of them must take alternative routes to reach their destinations.

The defendant CNO & TP admits the grade crossing closings, and states that it did so due to concern for public safety. This defendant admits that it earlier sought to close the crossings by agreement. It takes the position in this lawsuit that these were private, not public, crossings, not part of the county road system, and that it therefore possessed the discretion to close these crossings for the enhancement of public safety.

The defendant relies also on federal preemption, noting that it is federal transportation policy to encourage the elimination of public and private railroad grade crossings. The defendant states also in its answer that granting the relief which the plaintiff seeks here would place an undue burden on interstate commerce, in violation of the United States Constitution.

In moving for summary judgment [doc. 8], in which the defendant trustees join [doc. 22], the defendant CNO & TP offers affidavit evidence by its superintendent, its assistant supervisor of archives, and an attorney law clerk employed by Cincinnati Southern, which evidence shows that the defendants have no knowledge or any record of an agreement or a grant of permission concerning either the Bear Creek grade crossing or the Elgin grade crossing. This evidence also shows that it is the regular practice of the defendant CNO & TP and of the defendant Cincinnati Southern to make and maintain such records. It is clear from this evidence that Cincinnati Southern owns the rights of way where these crossings occur, one near milepost 223.85 at Rugby, Tennessee, and the other near milepost 205.5 at Bear Creek, Tennessee.

In support of its counter-motion for summary judgment [doc. 10], the plaintiff county offers the affidavit testimony of long-time county employees and residents of the areas who have used the Bear Creek grade crossing and the Elgin grade crossing. This affidavit evidence shows that the Scott County Road Department "has maintained the roads leading up to the Elgin grade crossing and the Bear Creek grade crossing since at least 1927;" that the Rugby Road/Elgin grade crossing has been in existence for many decades, providing free and unobstructed access to the public; that the defendant CNO & TP once requested permission of the County Court of Scott County to close the Rugby Road/Elgin grade crossing, which permission was denied; that at the time this request was made, the County Executive of Scott County determined from his investigation "that the Scott County Road Department had maintained the roads over and across the Bear Creek grade crossing," and "that the Scott County Road Department had also maintained the Rugby Road/Elgin grade crossing on the east side of the tracks up to the track itself;" that for many decades, the public has enjoyed free and unobstructed access across the Bear Creek grade crossing, and the Scott County Road Department has maintained both sides of this grade crossing up to the tracks for at least the past 40 years; that the county road department has maintained that portion of the Rugby Road/Elgin grade crossing leading up to the edge of the tracks for at least the past 19 years; and that rerouting traffic away from these grade crossings will cause much inconvenience.

At oral argument before this court, the plaintiff county conceded that it has not discovered any evidence of a conveyance by either of the defendants to the plaintiff of any interest in either of these grade crossings, or of any formal dedication of either crossing for public use.

Many of the affiants whose testimony the county offers state their "understanding" that these grade crossings are public, that they are portions of public roads. In his affidavit, Ray Hatfield, the Superintendent of Roads of Scott County, states in part, "For as many years as I can remember, the public has had an absolute right to travel upon and across the Elgin grade crossing and the Bear Creek grade crossing."

■ An "understanding" that a road is a public road is a mere opinion that it is a public road, and so will not be considered by the court as dispositive of the issue. Superintendent Hatfield's statement is a statement of opinion concerning the ultimate issue, and so the court likewise will not treat it as tending to prove the plaintiff's case. Whether there is an absolute right enjoyed by the public to use either of these crossings is precisely the question which the court must answer by applying the law to the facts presented by the parties.

■ It is likewise of little importance to the decision of this suit that the CNO & TP first sought the county's agreement in closing one or both of these grade crossings. The defendant railway company might have considered it politically advantageous to seek the county's agreement, or might have made the request in the hope of avoiding exactly this litigation. In either case, the request for permission was not a disclaimer of any property right claimed by this defendant, or of its claimed discretion to close these crossings. In this respect, the request for permission was akin to an offer to compromise excluded from evidence under Fed.R.Evid. 408, and so the court will not consider it as an admission, waiver, or basis of estoppel.

The plaintiffs also offer into evidence a Cincinnati Southern Railway map dated December 31, 1927 (marked "Tracks Correct to Dec. 31, 1933"), which shows a grade crossing near the 223 milepost. This evidence shows the early existence of a grade crossing near milepost 223.85 near Rugby, Tennessee, but it gives no indication whether or not this grade crossing is public or private. The map itself bears a legend to the effect that it was not intended for use with respect to matters of title to real estate, and that no representation is made concerning the accuracy of any information shown on the map.

In response to the plaintiff county's motion for summary judgment, the defendant CNO & TP offers a 1909 deed to which is attached a "Map of Southern Part Town of Rugby Road Tenn." showing the area conveyed by the vendor to the vendee. This map shows the "C.S.Ry." right of way, but does not show a grade crossing as shown on the map submitted by the plaintiff. The defendant CNO & TP argues that this provides an inference that the Elgin grade crossing came after the railroad.

The defendant CNO & TP also offers another affidavit by its superintendent, to show that this defendant closed these crossings because it determined that they interfered with its operation of trains at speeds authorized by the Federal Railroad Administration. This affiant also states his opinion that the use of alternate routes instead of these crossings improves public safety.

The authorities relied on by the plaintiff county are inapposite; they do not deal with determining whether a grade crossing is owned privately by a railway company or is part of the public road which passes over the railroad. In *Atlantic Coastline Railroad Company v. Smith*, 264 F.2d 428 (6th Cir. 1959), decided under Tennessee law, the railway company and Sullivan County, Tennessee, had negotiated a contract under which the county constructed the public road and the railway company constructed an overhead bridge by which the county road crossed the railroad, but there was no specific agreement concerning control and maintenance of the approaches to the bridge. In a personal injury case brought by motorists injured at the site of one of the approaches to the bridge, the court of appeals held that the district court correctly charged the jury that the defendant railway company had a duty under the statute, now Tennessee Code Annotated § 65–11–101(a) [1], to keep the crossing in lawful repair. The court of appeals noted that under Tennessee law, "crossing" includes the necessary approaches, and rejected the argument that the statute did not apply to a crossing over a pre-existing railroad.

The plaintiff county here relies on this last ruling in *Atlantic Coastline Railroad Company v. Smith*, but this reliance begs the

---

**1.** "All persons, or corporations, owning or operating a railroad in this state, are required to make and furnish good and sufficient crossings on the public highways crossed by them, and keep such crossings in lawful repair at their own expense." T.C.A. § 65–11–101(a).

question. In the reported case, the overhead bridge was the railway company's responsibility because of the contractual division of responsibility between the company and the county. The statute stated the railway company's duty regardless of the age of the railroad beneath the bridge, but precisely because the railway company had assumed the duty to provide and to maintain a bridge between two portions of a county road.

■ In *Atlantic Coastline Railroad Company v. Smith,* the court was not called upon to decide whether the bridge crossing was public or private. That the duty to keep a grade crossing in safe repair applies even to a crossing constructed after the railroad crossed by it is irrelevant to the issue presented here, concerning whether a railway company may be compelled to keep a grade crossing open.

*Outlaw v. Louisville and Nashville Railroad Company,* 448 F.2d 1284 (6th Cir.1971), a later case also decided under Tennessee law, concerned the wrongful death of an individual while traveling over a grade crossing on a tractor. The court upheld the giving of a charge concerning the statute, now T.C.A. § 65–11–101(a), holding that the evidence established that the road which crossed the railroad at the crossing was a public road. As in *Atlantic Coastline Railroad Company v. Smith, supra,* the issue was the railway company's duty to keep in safe repair a crossing open to and used by the public, not whether the company had a right to close the crossing.

In *Wilkey v. Cincinnati, New Orleans & Texas Pacific Railway Company,* 47 Tenn. App. 556, 340 S.W.2d 256, *cert. denied, id.* (Tenn.1960), the Tennessee Court of Appeals held that when the Tennessee Commissioner of Highways re-routed a State highway which was a city street away from a grade crossing to an underpass, the commissioner lost the authority to eliminate the grade crossing when the route reverted to its status as a city street, so that a city ordinance was required to close the crossing. It does not appear that the railway company in *Wilkey* ever asserted that it had a right to close the grade crossing itself; the railway company relied on the commissioner's asserted authority pursuant to the contract for re-routing the highway and constructing the underpass.

■ The plaintiff county concedes in its brief filed in this civil action that "there is no express agreement or record of any agreement authorizing these crossings...." [Doc. 11 at p. 1.] This is fatal. A right in a railroad right of way cannot be acquired by prescription. *Cincinnati, N.O. & T.P. Ry. Co. v. Sharp,* 141 Tenn. 146, 207 S.W. 728 (Tenn.1918). Because a railway company is a common carrier serving a public purpose, it may not be estopped to assert its interest in its railroad right of way, or be held to have abandoned its right of way, on the basis of others' non-interfering use of the right of way over time, or on the basis of nonuser of the right of way. *See Southern Ry. Co. v. Vann,* 142 Tenn. 76, 216 S.W. 727 (1919) (concerning the relationship between a railway company and the owner of the land burdened by the company's right of way).

■ In the absence of any agreement with the plaintiff county, the defendant railway company has retained over the decades the right to close these private grade crossings. Because this is the case under Tennessee law, the court need not reach the more sensitive issues of federal preemption and undue burden on interstate commerce. The court notes, however, that if a railway company has a right to use its right of way for railroad purposes when and as needed, regardless of having not made use of the entire right of way during past years, *see, e.g., Nashville, C. & St. L. Ry. v. McReynolds,* 48 S.W. 258 (Tenn.Ch.App.), *affirmed, id.* (Tenn.1898), then it seems to follow that when a railway company needs to use its railroad for the operation of trains at higher, authorized speeds, it may close grade crossings in the interest of safety at the higher speeds.

For the reasons stated, the court will grant the defendant CNO & TP's motion for summary judgment, and will dismiss this civil action.

### ORDER

For the reasons stated in the court's memorandum opinion filed with this order, the court finds the plaintiff's motion for summary

judgment [doc. 10] not well taken, and it is **DENIED.**

The court finds the motion for summary judgment filed by the defendant Cincinnati, New Orleans and Texas Pacific Railway Company [doc. 8], joined in by the defendant Trustees of the Cincinnati Southern Railway Company [doc. 22], well taken, and it is **GRANTED.** It is **ORDERED** that this civil action is **DISMISSED.**